524                    SUPREME COURT OF GEORGIA,

Doe ex dem. Carr vs. The Georgia Railroad and Banking Company.

---

No. 76.—John Doe, ex dem., William A. Carr, plaintiff in error, *vs.* The Georgia Railroad and Banking Company, defendants in error.

When a railroad company claimed the right to deviate from the original route surveyed for their road, and specially designated in a deed of conveyance made by the plaintiff to them, granting the right of way, through his land, in locating their road under the clause in their deed containing the following words, " with liberty to make such slight alterations in the route now surveyed, as not materially to change the route now surveyed ;" it was held, in a controversy between the plaintiff and the company, as to whether the road was located on the land conveyed by the deed of the plaintiff, that the latter might give in evidence, upon the trial, the situation, value and condition of the land, over which the original route was surveyed, and described in the deed, as well as that over which the road was finally located, for the purpose of showing the *materiality* of the variation, as affecting the rights of the respective parties.

When a statute, granting a charter to a railroad company, provides for the assessment of damages in a summary way, to be paid to the landholder whose private property shall be taken for the use of the road, there being no negative words in the statute, express or implied, the landholder, whose property is thus taken, is not deprived of his common-law remedy to recover damages therefor : the statute creates no new right, and being in derogation of a common-law right, must be strictly construed ; the summary remedy given by the statute is *cumulative* only.

Private property cannot be taken for public use without a just compensation ; and where a railroad charter provides, adequate security shall be given to the landholder, whose property shall be taken for the use of the road, for the payment o.' such damages as shall be assessed in the manner pointed out thereby, no title to the land thus taken vests in the company, nor can the company appropriate the same to the *exclusive use* of the road, so as to defeat the right of the landholder to maintain trespass in ejectment therefor, until such adequate security shall be given ; and it is incumbent on the defendants to allege in their plea, and prove at the trial, the provisions of their charter, in that respect, have been strictly complied with, before the landholder can be deprived of his title to his property, for the use of the public.

For the facts of the case, and the errors assigned, see the opinion of the Supreme Court, delivered by his honor Hiram Warner.

Lumpkin, Judge, being a stockholder in the Georgia Railroad and Banking Company, gave no opinion in the case.

H. and T. R. R. Cobb and William H. Hull, for the plaintiff in error.

T. R. R. Cobb argued as follows:

The right of way is an incorporeal hereditament, a mere easement growing out of the freehold which remains in the grantor.—*Cortelyn* vs. *Van Brunt*, 2 *John. R.* 357, 15 *ib.* 447; *Gidney* vs. *Earle*, 12 *Wen.* 98.

The freehold remaining in the grantor, he is entitled to possess and use it in every manner consistent with the right of passage. And for any exclusive appropriation, he may maintain trespass to his possession, or ejectment to recover it back.—*1 Burrow*, 143; *Cortelyn* vs. *Van Brunt*, 2 *John. R.* 363; *Gidney* vs. *Earle*, 12 *Wen.* 98; 15 *John. R.* 447; *Trustees of the Presbyterian Soc. in Waterloo* vs. *The Auburn and Rochester R R. Co.* 3 *Hill*, (*N. Y.,*) 567.

This being the rule of law, *even if the defendants had a right of way* over the premises in dispute, by grant from plaintiff, he could maintain ejectment against them for any exclusive possession of it. The building of a depot is such an exclusive possession.—*Cortelyn* vs. *Van Brunt*, 2 *John.* 357; *Lyman* vs. *Arnold et al.* 5 *Mason*, 195; 3 *Kent*, 419.

Even if the grant of the right of way would convey the right of building a depot, the accepting of a deed to a specific number of lots for the purpose of erecting a depot thereon, would restrict the company to those lots, so long as they retained the land so conveyed.—*Goodman* vs. *Gilbert*, 9 *Mass.* 510; *Phelps* vs. *Townsend*, 8 *Pick.* 392.

If the deed from Carr to the railroad company, as to the right of way, *did not cover* the premises in dispute, the next question is: Is there anything in the charter of the company which would defeat this action? and this brings up more directly the errors complained of in the court below.

Before entering upon this investigation, it might be well to refer to some of the rules governing the construction of such statutes.

" A statute in favor of a corporation or particular persons, and in derogation of common right, should be strictly construed."—*Sprague* vs. *Birdsall*, 2 *Conn.* 419; *Coolidge* vs. *Williams*, 4 *Mass.* 140; 11 *Pet.* 465; 4 *Hill*, (N. Y.,) 76, 92; 3 *John. Cases*, 107; 1 *Bur.* 377.

" Every statute authority in derogation of the common law, to divest the title of one and transfer it to another, must be strictly pursued, or the title will not pass."—*Sharp* vs. *Speir*, 4 *Hill*, 76; *Sharp* vs. *Johnson*, 4 *ib.* 92.

Railway acts are to be construed strictly against the party obtaining them, and liberally for the public.—*Parker* vs. *The Great Western Railway Co.* 7 *Scott, N. R.* 835.

"An affirmative statute (without a negative expressed or implied) does not take away the common-law right, and the party may make his election, to proceed under the statute or at common law."—1 *Chitty's Gen'l Prac.* 26; 1 *Comyn Actions upon Stat.* C. 6 *Bac. Abr.* 376, and cases cited; *Crittenden* vs. *Wilson*, 5 *Cowen* 165; 5 *John. R.* 175; 10 *ib.* 389; 13 *ib.* 322.

The first section of the amended charter of the Georgia Railroad Company, passed in 1836, reads as follows: "From and after the passing of this act, the 11th sect. of (the act of Incorporation) be and the same is hereby repealed, and that *in all cases in which disagreement* may exist, or may hereafter arise between individuals or incorporations and the Georgia Railroad and Banking Company, as to the *right of way or damages* to property, the disagreement shall be settled as prescribed in the 15th section" (of the charter of the Central Railroad.)—*Prince*, 359.

The 15th section referred to, reads as follows: "When any person shall feel himself aggrieved or injured by the said railroad being cut or carried through his

land, or by the use of lumber or other materials from any lands in the neighborhood of said road, or by any other works of the company; or when the said company cannot agree with any person, through or on whose land the said railway or appendages shall be conducted, or from whose land timber or other materials shall be taken for the use of the said road, as to the damage sustained, the amount of such damage or injury shall be ascertained and determined by the written award of three sworn appraisers, all of whom shall be disinterested. freeholders of the county where the land in dispute lies; to be chosen, one by the company, one by such owner, if he shall think proper, and one by the Inferior Court of the county where such land lies, or by any three of the justices of said court in vacation. But if such owner shall decline to appoint an appraiser, then two to be appointed by the Inferior Court, &c., and the decision shall vest in the company the *fee simple* of the land in question, and, for the other party, a judgment for its value thus ascertained, which may be enforced by the ordinary process of said court, &c.—*Prince*, 331.

A proviso to said section reads: " Provided that no difference or disagreement between the company and any landholder shall operate by injunction or otherwise to suspend the progress of said work, but the same shall in all cases be continued without interruption on adequate security being given by said company to the landholder to pay such damages as shall be assessed in manner aforesaid."— *Prince*, 332.

The prerogative exercised by the Legislature in passing this statute, is the highest known to the laws of the land, viz: taking private property for public use. Without arguing here the question of the constitutionality of such acts, it may be well to refer to the facts, that such grants by the Legislature, in the different States, when sustained, have been upon the single principle, *that just compensation was previously provided—Beekman* vs. *Saratoga and Schenectady R. R. Co.*, 3 *Paige R.* 45.

Upon these sections I would remark:

1st. The operation of the statute is to vest *not the right of way*, but ʼthe *fee simple* in the company. It does not merely append an easement to the land, but entirely divests the title from the landholder.

2d. The section adopting the 15th section as a part of the charter of the Georgia Railroad and Banking Company, expressly restricts it to " *all cases in which disagreement* may exist or may arise, as to the *right of way or damages to property.*" Can it be made to apply to a case where there is no *disagreement*—but on the contrary *a deed has been given to the right of way*, and there is no complaint of damage done property upon the way?

The Legislature have declared this work of public use, and those persons through whose land it must pass, if they will not agree upon terms with the company for the right of way, the Legislature have prescribed a mode by which the company may divest them of their title and vest the fee simple in themselves. Is not the doctrine monstrous in the extreme that the landholder—who has done everything that the charter was intended to force him to do—should still be subject to have the fee simple of his land wrested away from him and vested in the company. If the application was now at the instance of the company, under their charter, to obtain the *fee simple* to this land, would not a plea of a deed of right of way accepted by the compaay be sustained by the court? The answer of the court would be to them, " You have agreed with the landholder—it is not a case of *disagreement* contemplated by your charter."

This is not only the answer of the law, but of justice. Necessity and the public benefit are plead as excuses for depriving the landholder of his property. Yielding to that necessity and the public benefit, he voluntarily gives what they require. Can the law wrest more from him? If the strict letter would, (which in this case it does not,) the necessity of the case being the basis of its constitutionality,—that necessity failing the law would become unconstitutional—*Ratione cessante, cessat ita lex.*

In this view then of this statute, there being *no disagreement* between the par

ties, the defendants having accepted a deed to the right of way, must stand or fall by that deed.

In this connection we may properly notice that part of his Honor's charge, which says:

"That in the present case where a deed granting the right of way through the plaintiff's land had been made by plaintiff, and the defendant had located the road under the belief, that the grant had been pursued, it was necessary for the plaintiff to give the proper officers of the company notice of his considering himself aggrieved and requiring a proceeding under the provisions of the charter, to assess the damages. That as no such notice had been given, the plaintiff could not in law recover."

His Honor takes for granted two facts on which we would, if allowed, join issue:

1st. That the defendants located the road under the belief that the grant had been pursued; and

2d. That no notice was given of the plaintiff's feeling himself aggrieved. However, if the facts were so, his Honor's law is certainly new. A, owning two adjoining lots of land, sells and conveys one to B—B instead of possessing himself of the one which he purchases, takes possession of the other, still the property of A—under the belief, if you choose, that it is the one he purchased. Has A no right of action against B, without first giving him notice of his mistake?

B, as every one who purchases property, takes possession at his own peril, and if his title proves to be invalid, he is a trespasser, as against the legal owner.

When the railroad company went to locate their road under the grant of the right of way, it was for them to see to it that they pursued the grant. So soon as they overstepped the grant, they became trespassers and are liable as such. His Honor says it was necessary for him to give the proper officers notice. What law created that necessity? We have seen between man and man there is no such necessity. What law places this company upon a higher footing?

The statute requires no such notice. What kind of notice should it be? In writing or verbal. It was in testimony that the plaintiff protested against the change of route and against the location of the depot, objecting all he knew how.

His Honor says no such notice is given.

We must suppose, then, it should have been in writing: " Notice to the proper officers ?" Who are the officers to be notified? The engineer, the president, or whom? Each of these were informed of the objection and also the sub-engineer, who made the alteration. His Honor says the proper officers. Who are they? The statute not specifying any such notice to be given, is equally silent, of course, upon whom it must be served. It is the misfortune of this plaintiff to have been ignorant of any law specifying what sort of notice, if any, need be served, and upon whom?

The statute, so far from requiring the landholder to give notice to the company of his requiring a proceeding to be had under the charter, contemplates this proceeding to progress against the wishes and consent of the landholder; for it provides for the Inferior Court to appoint two of the appraisers if he declines, and gives him the appointment of one " if he shall think proper."

This brings us to our third position with reference to this charter, viz:

3d. That the proceeding authorized under it, is for the benefit of the company to obtain the fee simple of land over which the owner will not grant them the right of way, and that the payment of a just compensation is a condition precedent to the title becoming vested in them; and consequently to protect themselves under their charter, they must aver and prove that they have had assessed and paid a just compensation—or at least under the proviso to the 15th section—that they had given ample security for the payment of whatever damages might be assessed against them.

This proviso settles beyond question, that the railroad company have no right to enter upon, much less exclusively possess, the land, until adequate security is given to the landholder for the damages which might be assessed.

"The same shall in all cases be continued without interruption, on *adequate security being given,*" &c. On this branch of the argument, we could not do better than refer to the long and able investigation and decisions of this identical question in the Court for the Correction of Errors of the State of New York, in the case of *Bloodgood* vs. *The Mohawk and Hudson Railroad Company,* 18 *Wend.* 9, 79. The provision in their charter is the same—"*and in cases of disagreement of price,*" appraisers shall be appointed, whose award shall vest the fee simple of the land in the company. The court decide, "When power is given to a railroad company to enter upon, take possession of and use the lands of individuals in the construction and maintenance of their road, the section granting the power contains a *proviso* that the lands so taken should be purchased by the company, and in case of disagreement as to price, that the damages of the owner should be appraised in a particular manner—that in view of the constitutional prohibition to the taking of private property without making just compensation to the owner, the proviso above referred to must be deemed a *condition precedent,* and that the plea of the company put in by them to a declaration in an action of trespass *q. c. fr.* was imperfect in not averring the assessment and payment of the damages previous to entry upon the land and the appropriation of the same to the use of the company."

Says the Chancellor, page 18, under a different construction: "I should hold that the provision which authorizes the appropriation of the plaintiff's property to the use of the corporation, *before* the damages had been ascertained and paid, was *unconstitutional* and *void.*"

Senator Edwards says, p. 26: "If the act does not require it, (the assessment and payment of the damages,) on taking possession of the land and constructing the road, then I am prepared to say, that in my judgment it is in *violation of the Constitution* and *void,* and of course could form no justification for the *trespass* alleged. The Constitution declares, that private property shall not be taken for public use without a just compensation. When is the compensation to be made? Clearly upon the taking of the property.—for it declares it shall not be taken without a just compensation. It is to be simultaneous with the act of taking the property, that is, depriving the owner of the use and benefit of it, and appropriating it to the public use. This appears to me to be the fair and rational construction of this clause of the Constitution—the framers of it could not have designed that the private property of individuals, which in some instances might constitute their whole means of subsistence, should be taken *upon credit.*"

In their wisdom, the Legislature of Georgia have thought otherwise, and authorized the taking of the property *upon credit ;* but it must be *adequate security* given. At least, then, before the defendants could justify taking possession of plaintiff's lands, they should have averred and proved that they had given adequate security for the payment of damages assessed.

If the court, then, should be of opinion that the defendants are not debarred from resorting to the extraordinary powers granted in their charter, by having accepted a deed to the right of way, and the fact of there being no *disagreement* between the parties in the sense of the statute ; still, under this view of the case, the court erred in charging the jury that the charter of the company would bar the plaintiff of his right of action—they not having averred or proved an assessment of the damages, or the giving of *adequate* security for the payment of the damages.

4th. The remedy pointed out in the statute for the assessment of damages is at the instance of the corporation alone, and is not within the reach of the person aggrieved. This is evident, not only from the fact that such is the construction judicially placed upon it by our courts, but from the statute itself, which, while it provides for the appointment of the appraiser when the individual refuses, makes no provision when the company refuses. The Legislature could never have intended to have left the rights of parties at the whim and caprice of a corporation. If the party aggrieved, then, has no remedy within his reach and at his instance, how can the statutory remedy afforded the company bar the party's right at

common law? He would be placed in this singular position without a remedy, except at the mercy of the railroad company.

His Honor seems to place the construction upon the law, that the refusal of the company to commence the proceeding under the statute, would give the party aggrieved a right of action. The statute, under his Honor's construction, takes away the common-law right of action from the plaintiff, and, at the same time, points out no remedy for him. His Honor, however, would amend upon the statute, and upon notice given by the party aggrieved, and a refusal upon the part of the company to commence the proceeding pointed out in the statute, his Honor would give the party aggrieved a right of action. What kind of action? Does it revive the common-law right—to sue in trespass? Or must he bring case, and set off the notice and refusal? Or must he proceed to have the charter forfeited? Again : Within what time must the company commence the proceeding after notice? What length of time—delay—would give the party aggrieved a right of action? The only answer that can be given to his Honor's position is, "*Ita lex, non scripta est.*" Such a latitude of construction given the statute, would lead to endless difficulties.

In short, the statute providing this remedy, at the instance of the corporation, and for their benefit, in order to be plead as a bar to an action in behalf of a party aggrieved, must show, not that the charter gave them this extraordinary remedy; but, moreover, that they have taken the benefit of the statute, and the dispute is "*res adjudicata.*"

5th. Lastly, even if this remedy were within the reach of the party aggrieved, it is cumulative of the common law, and he has his option either to proceed under the statute, or to resort to his common-law action.—1 *Chit. Genl Prac.* 26 ; 1 *Comyn Action upon Statute, C.; 6 Bac. Ab.* 376 ; 5 *Con.* 165 ; 5 *John. R.* 175; 10 *ib.* 389 ; 13 *ib.* 322 ; *Coats* vs. *The Clarence Railway Co.* 4 *Eng. Cond. Chancery Reports,* 378.

To recapitulate, as to the construction of the statute :—

1st. The statute, pointing out a mode to obtain the *fee simple* of the land to the company, in the event of a *disagreement between the parties,* does not apply to a case where the parties agree, and a deed is made and accepted to the right of way.

2d. The company having accepted the deed to the right of way, cannot abandon the deed, and resort to the mode specified in the charter for obtaining the *fee simple.*

3d. That if the company abandon the deed, and resort to their charter, before they can justify a trespass under their charter, they must aver and prove that the damages have been admitted and paid under the statute—in other words, the assessment and payment of a just compensation, is a *condition precedent* to their right of entry; or, at least, under the proviso of the statute, the giving of *adequate security* is a *condition precedent* to the right of entry.—18 *Wend* 9.

4th. The remedy under the statute, being at the instance of the corporation alone, does not debar the party aggrieved from his common-law right of action, so long as the company fail or neglect to take advantage of the statutory provision.

5th. Consequently, in order to sustain his action at common law, it is not necessary for him to prove any notice to the company, requiring them to proceed to have the damages assessed under the statute.

A stockholder is an incompetent juror where the company is a party, and it is a principal challenge.—3 *Bac. Abr.* 756 ; 2 *Comyn Dig.* 204 ; 2 *John. R.* 194, (*Wood* vs. *Stoddard ;*) 19 *John. R.* 115 ; 2 *Caines,* 133.

Where a deed authorizes the grantee to make a *slight* variation, not materially altering the route designated, it is competent to give in testimony as to the value of the land occupied by the route designated in the deed, and the land to which the route has been changed ; also testimony as to the damage done the grantor by the saving to the grantee, for the purpose of showing the *materiality* of the variation, which was a question for the jury to decide.—*Osborn* vs. *Wise, 7 Car. and*

34

*Pay.* 761; *Towle* vs. *Bigelow,* 10 *Mass.* 379 ; 3 *Philip's Ev.* (*Cowen's note*) 1402 ; 4 *Dana,* 336.

An engineer is entitled to give his opinion to the jury upon matters coming strictly within his profession. The materiality of a change in the route is one of those matters.—1 *Greenleaf*, 489–90.

JUNIUS HILLYER, for the defendant in error,

Insisted that there was no error in the court below, on any of the grounds assigned by the plaintiff, and that, by the charter of the company, they have a right to build a railroad from Augusta to Athens. The road is a public highway, and the State has the right to seize the land of the citizen for the purpose of locating the road; and it is not material whether the State builds the road, or whether it authorizes an incorporation to build it; and that plaintiff cannot recover in ejectment. His only remedy is a suit at law, or under the charter for damages—and relied on the following authorities :—4 *Wend.* 667 ; *Prince Dig.* 304, 311, 331, 358.

*By the Court*—WARNER, Judge.

This was an action of trespass in ejectment, brought by the plaintiff against the defendants, to recover the possession of lot of land number twenty-six, (26,) in a survey made by E. L. Thomas on the east side of the North Oconee river, in the county of Clark. To this action the defendants plead not guilty, and also relied on the charter granted by the Legislature to the company.

It appears from the record, the plaintiff, in the year 1838, executed two deeds to the defendants, by one of which he granted the right of way over his land for the location of the railroad, the same to be located on a route which had previously been surveyed, particularly designated and staked by the company, " known and distinguished as the most southern or western route, entering said Carr's land on the line between him and Robert Morris' field, and terminating the said road, on said Carr's land, at or near the fence on or near the top of the hill, just above the Factory Company's land, with the liberty to make such *slight alterations* in the route now surveyed *so* as not *materially* to change the location of the route as already designated, &c." The other deed conveys to the company, lots number 13, 14, 15, 16 and 28. The first deed, it will be remembered, does not convey to the defendants a *general right of way* over the plaintiff's land, on which to build the road, but is confined to a *certain specified* route, then surveyed and located, with liberty to the company to make such *slight* alterations in the route as no materially to change the location of the same.

The first question made on the trial was, whether the deeds of the plaintiff covered the premises in dispute ; the plaintiff contending the road was not built on the land granted by the deeds, and offered to show, the land over which the road now runs was much more valuable than that over which the route was first located, and which never could have been intended, by the contracting parties, to have been included under the terms, " *slight alterations, so a not materially to change the location of the route as already designated.*"

The court below decided, that testimony to prove the value of the land traversed by the respective routes, was not admissible, " on the ground, the word *materially,* in the deed of Carr, had no reference particularly to the value of the land, but was used with reference to distance or location.

and it was immaterial whether the land on which the road was located, was more or less valuable." The words employed by the contracting parties are to be taken in their common acceptation, and we are to understand them in that sense. The specified route was not to be altered or changed, so as *materially* to affect the rights of Carr, or his interests in the property over which it was located. Whether the present location of the road was such a slight and immaterial variation from the route originally surveyed, as was contemplated by the parties, was the question for the jury to decide from the evidence ; and we are of the opinion, it was competent for the plaintiff to have shown, upon the trial, the relative value of the land traversed by the two routes, the nature and condition of the same.

Although the words used in the deed may have had reference to distance or location, yet a change of location might become very *material*, with reference to the interests to be affected by such change. If the altered route was to destroy a valuable building-lot, or a valuable spring, incident thereto, which was not done by the original route, the value of the ground traversed by the respective routes, would, in our judgment, be a proper subject of inquiry, for the purpose of ascertaining the *materiality* of the alteration of the route by the company, with reference to the interests of the plaintiff. Does the altered route materially affect or prejudice the rights or interests of the plaintiff? To enable the jury to determine this question correctly, evidence may be given as to the value of the rights and interests of the plaintiff, affected by the location of the road on the altered route, as well as to the nature and extent thereof, and also the value and extent of the rights and interests of the plaintiff, which would have been affected by the location of the road on the original route surveyed and staked by the company. The situation, value, and relative position of the property traversed by the two routes, would, in our judgment, go very far to illustrate and explain what the contracting parties intended, in reference to the subject matter of the contract, by the use of the words, " with liberty to make such slight alterations in the route, as now surveyed, so as not *materially* to change the location of the route, as already designated." Suppose the tier of lots, over which the original route was located, were of the average value of one hundred dollars each, and the tier of lots over which the road is now located, are of the average value of five hundred dollars each, would not the increased value of the property taken for the location of the road, be evidence of the *materiality* of the alteration of the route, so far as the rights of the plaintiff are concerned ? Would the authority contained in the deed, " to make such *slight alterations* in the route as not *materially* to change the location," justify the company in abandoning the route over the tier of lots worth one hundred dollars, and locating their road over the tier of lots worth five hundred dollars ? We think not ; and that the value of the land traversed by the two routes was admissible, for the purpose of showing the *materiality* of the alteration of the same, and ought to have been admitted by the court below, on the trial of the cause.

The next ground of error assigned is, to the charge of the court to the jury. The court below charged the jury, " that the defendants, by their acts of incorporation, and those amendatory thereof, were authorized to construct a road from Augusta to Athens; provision was made in the charter for settling disputes between the company and owners of lands through

which the road might pass. In that provision, it was not declared who should make the first application to the Inferior Court, to appoint commissioners to assess the damages ; that in the present case, when a deed granting the right of way through the plaintiff's land, had been made by plaintiff, and the defendants had located their road, under the *belief* that the grant had been pursued, it was necessary for the plaintiff to give the proper officers of the company *notice* of his considering himself aggrieved, and requiring a proceeding, under the provisions of the charter, to assess the damage ; that as *no such notice had been given, the plaintiff could not in law recover*."

By the amendatory act of 26th December, 1836, (*Prince's Dig.* 358,) it is declared, " that in all cases in which disagreement may exist, or may hereafter arise between individuals, or incorporations and the Georgia Railroad and Banking Company as to the right of way or damages to property, the disagreement shall be settled as prescribed in the fifteenth section of " an act to amend an act, incorporating the Central Railroad and Canal Company of Georgia." By the fifteenth section of the Central Railroad and Canal Company it is declared : " When any person shall feel himself aggrieved or injured by the said railroad being cut, or carried through his land, or by the use of lumber or other materials from any lands in the neighborhood of said road, or by any other works of the company ; or when the said company cannot agree with any person through or on whose land the said railway or appendages shall be conducted, or from whose land, timber, or other materials shall be taken for the use of the said road, as to the damages sustained, the amount of such damage, or injury, shall be ascertained and determined by the written award of three sworn appraisers, all of whom shall be disinterested freeholders of the county where the land in dispute lies, to be chosen, one by the company, one by such owner, if he shall think proper, and one by the Inferior Court of the county where such land lies, or by any three of the justices of such court, in vacation ; but if such owner shall decline to appoint an appraiser, then two to be appointed by the Inferior Court, or three justices thereof in vacation as aforesaid, one by said company, the award of whom, in writing, shall operate as a judgment for the amount as against the company, and shall be enforced by an execution from the Inferior Court, with the right of appeal to either party, to be tried by a special jury, at the next term thereafter of the Superior Court of said county, and the decision shall vest in the company the fee simple of the land in question, and in the other party a judgment for its value thus ascertained, which may be enforced by the ordinary proofs of said court, &c. Provided, that no difference, or disagreement between the company and any landholder, shall operate by injunction or otherwise, to suspend the progress of said work, but the same shall in all cases be continued without inter- ruption, an *adequate security being given by said company to the land- holder to pay such damages as shall be assessed, in manner aforesaid*. And provided also, it do not interfere with the house, mill, or other building or yard enclosure of individuals. Provided, *five days' notice shall be given to the owner of such land of the time and place of trial*."—*Prince's Dig.* 331.

Whether a judgment against the company for the damages as- sessed, to be enforced by the ordinary process of the court, or ade- quate security being given by the company to the landholder to pay the damages, is such a just compensation " for the *public use* of *private*

property," as is contemplated by the Constitution, was not discussed on the argument, and we do not desire to be considered as expressing any opinion on that question. Whether the deeds of the plaintiff to the defendants covered the premises in dispute, was a question of fact for the jury ; and the charge of the court on that branch of the case is not excepted to. If, however, the deeds did not cover the premises in dispute, then, no legal protection was afforded the defendants by them against the plaintiff's right to recover. The title of the defendants under their deeds, and their title under their charter, present two separate and distinct sources of title. The deeds of the plaintiff either protect the defendants in the possession of the premises, or they do not : if they do, there is an end of the controversy ; but if they do not, then the defendants are thrown upon their charter for their title, and the question is, have they shown such a title by their plea, and the evidence under it, as will protect them in law, against the plaintiff's right to recover ? The action of trespass in ejectment has been instituted for the sole purpose of trying the *title* to lands or tenements.—3 *Bl. Com.* 203. In an action of ejectment, the *legal title* must prevail. An equitable title or interest cannot be set up as a defence, against the legal title.—*Doe ex dem. Da Costa,* vs. *Wharton,* 8 *Term. Rep.* 2 ; *Jackson* vs. *Pierce,* 2 *John. Rep.* 221 ; *Jackson* vs. *Van Slyck,* 8 *John Rep. 487* ; *Sinclair* vs. *Jackson,* 8 *Cowen's Rep.* 543 ; *Jackson* vs. *Deyo,* 3 *John. Rep.* 417.

The defendants plead the general issue of not guilty, and further allege, if they ever did enter, and commit the trespasses complained of, they had a right to do so, under the statutes of this State, giving the defendants a right to construct a railroad from the city of Augusta to Athens in Clark county, and for that purpose had a right to pass through the lands of the plaintiff and others, and giving to plaintiff and others a specific mode of redress, and remedy for any acts or use of such land so taken for said road ; and that if any trespasses were made, the same were in the *construction and use of a road,* made under such statute ; all this, the defendants are ready to verify, &c.

By the 5th article of the amended Constitution of the United States, it is declared, " *private property shall not be taken for public use, without just compensation.*" The power of taking private property for public use, can only be justified by the law of necessity, and before the plaintiff can be deprived of his land for such a purpose under the charter of the company, it is incumbent on them to show everything has been done which the Constitution and the charter require to be done. " In the construction of statutes, made in favor of corporations or particular persons, and in derogation of common right, care should be taken not to extend them beyond their express words or their clear import.—*Sprague* vs. *Birdsall,* 2 *Cow. Rep.* 420 ; *Melody* vs. *Reab,* 4 *Mass Rep.* 473.

The defendants claim the right, under their charter, to take the private property of the plaintiff, and appropriate it for the use of their road : indeed, their plea admits they have so taken it, but does not show they have made, or offered to make him any " just compensation" therefor, by giving him *adequate security for the damages,* as provided in the charter, or in *any other manner whatever.* If the charter had con-tained no provision for making compensation to the plaintiff for his land, it would be in direct conflict with the Constitution, and void.

To enable the defendants to protect themselves under their charter,

they should have at least plead, and proved at the trial, they had given adequate security to the plaintiff, to pay such damages as should be assessed against them for taking and appropriating his land to the use and construction of their road.

Whether the *right of action* against the Georgia Railroad and Banking Company would give to the plaintiff a *"just compensation"* for his property, we cannot judicially know; but such a right of action against the Monroe Railroad and Banking Company, and some other railroad companies in this State, we have reasons to believe, would fall very far short of being that *"just compensation"* contemplated by the Constitution. We must settle the principle, as applicable to all chartered companies authorized to take private property for public use, without regard to their solvency or insolvency; and hold them down to a strict compliance with the provisions of their constitutional charters in that regard.

Admitting the charter of the company as plead, to have been sufficient to have authorized the defendants to have entered upon the plaintiff's land for the purpose of *surveying* and *locating the road;* yet, we are of the opinion, the plea is not sufficient to authorize them to appropriate the same for the *permanent use* and construction of the road, and vest the *title thereto* in the company, without showing that they had given to the plaintiff *adequate security,* to pay such damages as should be assessed in the manner pointed out thereby.

This is the only provision in the charter, which, in our judgment, gives life and vitality to it; without it, there is no *" adequate security"* to compensate the landholder for his private property, taken for the use of the public, unless, indeed, a *right of action* against the company shall be considered such a "just compensation" as is contemplated by the Constitution.

In the case of *Bloodgood* vs. *The Mohawk and Hudson Railroad Company,* (18 *Wend. Rep.* 9,) the identical question which we have been considering, was thoroughly discussed and decided; and in our judgment, decided in accordance with the meaning and spirit of the fundamental law of the land. The courts of justice cannot well be too vigilant in guarding the rights of the citizen, against the eager, and oftentimes imprudent, hasty hand of legislation. While we feel bound to protect all the *vested* rights which have been legitimately acquired by all chartered companies, in the most sacred manner, yet we feel bound to guard, with great care and vigilance, the rights of the citizen against all unauthorized encroachments on their part, by confining them strictly within the limits of their respective charters.

The naked charter of the company, as set forth in the defendants' plea, without an averment of a compliance, on their part, with that provision which requires them to give *adequate security* to the landholder, who is the plaintiff in the action of ejectment, does not justify them in seizing, and appropriating to their *exclusive use,* his private property. Admitting the giving the adequate security by the company, to pay the damages which may be assessed, is such a *"just compensation"* as required by the Constitution, which would authorize the company to take the private property of the plaintiff for the public use; yet it is clear, in this case, such *just compensation has not been made.* Until that is done, it will hardly be contended that the *title* of the plaintiff has been

*legally divested*, and the same *vested* in the defendants. To vest the title in the defendants to the premises in dispute, or to authorize them to appropriate the same to their *exclusive use*, under their charter, it is incumbent on them to show they have made the plaintiff *"just compensation"* therefor, which in our judgment, does not appear from the record in this case.

The court below charged the jury, that it was necessary for the plaintiff to recover in law; that he should have given the proper officers of the company *notice* of his considering himself aggrieved, and required a proceeding, under the provisions of the charter, to assess the damages. That as no *such notice* had been given, the plaintiff could not recover. The right of the plaintiff to recover in this action, it will be perceived, was placed on the ground of *notice* by the plaintiff to the defendants, that he considered himself aggrieved by the company appropriating his private property for the use of their road. The reason given for requiring the notice is, that the defendants had a deed granting the right of way through the plaintiff's land, and had located the road under the *belief* the grant in the deed had been pursued. What may have been the *belief* of the defendants upon this subject, when locating their road, it is somewhat difficult for human tribunals to decide.

The right of way granted by the deed, as we have already seen, was for a *certain specified route*, surveyed and staked, with the liberty to make *slight and immaterial alterations*.

J. M. Hunt testifies the road was located with a variation at the point of termination, some 70 or 80 yards from the place where the stakes were first placed; that neither the road nor depot touch either of the lots deeded by Carr to the company. If the road had run as first staked, it would not touch either lots number 24, 25, 26, or 27, nor would fifty feet on either side. Fifty feet on either side of the road now located, takes a belt through 26, 27, and a portion of 25 and 24. According to the plat furnished us by the defendant's counsel, it appears the first route staked, and which was conveyed by the plaintiff to the company, runs on the north side of the middle of one tier of lots, and the road, as located, runs through another tier of lots, and nearly through the centre of lots 26 and 27.

Pearson B. Monk testifies he was engaged in locating the road, and that the plaintiff objected, at the time, to the alteration of the route.

Willis Cooper testifies he did, as the agent of the plaintiff, who was absent from the State, protest, at the time of the location and building the depot, against the company making the alteration they did.

But admit the defendants *did believe* they had located their road on the land conveyed by the deed of the plaintiff, when, in point of fact, it *was not so located*, would their mistake in any way affect the plaintiff's title to the land not conveyed, or would *their mistake vest the title in themselves?*

Individuals frequently purchase land, pay their money for it, and go into possession under a warranty deed, with the most *perfect belief* they have a good title thereto, and yet are ousted by one having a paramount title to the premises. He who has the paramount title, would hardly think it necessary, we suppose, to notify the purchaser in possession, who purchased under the *belief* he had a good title, as a *condition, precedent* to his right in law to maintain ejectment for the premises in dispute.

Such notice might be considered neighborly and equitable, perhaps, but would not affect the *legal title* of the respective parties.

In the action of ejectment, as we have already seen, the plaintiff must recover, and the defendants defend, upon the strength of the *legal title*. The defendants do not claim as the *tenants* of the plaintiff.

In *Jackson* vs. *Deyo*, 3 John. *Rep.* 417, already cited, it was expressly decided, a person in possession of land, who claims to hold it in fee, is not entitled to notice previous to bringing an action of ejectment; although the defendant in that case, held under an *equitable* title, the court say: "It never has been decided, that a notice to quit was necessary, unless where the relation of *landlord and tenant* existed. We might as well require a previous notice to quit, in every case." As we have already stated, the deeds of the plaintiff to the defendants, either cover the premises in dispute or they do not; if the deeds *do not cover the premises in dispute,* then the defendants stand as if no deeds had ever been made, so far as any *legal title* conveyed thereby is concerned, and they are thrown upon their charter for a title, to defend themselves against the plaintiff's action. We have no doubt, the defendants were at liberty, notwithstanding the grant of the special right of way by the plaintiff to them, to abandon the route granted, and locate their road on a different route through the plaintiff's land, provided their charter is constitutional, and they have complied with its provisions in that respect. It is true, the charter does not declare which party shall make application for the appointment of commissioners to assess the damages which the landholder may sustain, by the taking of his private property for the use of the company, nor is it necessary for us now to decide that question: but when we take into consideration, that the company is the moving party, and the citizen in the peaceable and quiet enjoyment of his property, guarantied to him by the constitution and laws of his country, of which he cannot be deprived, but for the use of the public; and the *proviso* in the charter, requiring *five days' notice* shall be given to the owner of the land, of the time and place of trial, when the assessment of damages is to be made; added to the fact, he is entitled to select one appraiser, if he shall think proper, and the mode of proceeding pointed out, if he declines to appoint an appraiser; we should hesitate before deciding, it was not both the moral and legal duty of the company to make the application, before an exclusive appropriation of his private property to the use of the road—the more especially when their agents were notified of his dissatisfaction at the time of its location.

Conceding, however, the plaintiff in this action had a remedy under the charter for the damages sustained, in consequence of taking his private property for the use of the road, did this *affirmative* remedy take away or destroy his common-law right of action? We think not; for the charter providing for the assessment of *damages* for depriving the plaintiff of his property, gave him no *new right;* he was entitled to damages by the common law, before the enactment of the statute; and there are no *negative* words in the statute, expressed or implied, from which we can arrive at the conclusion, it was the intention of the Legislature to deprive the plaintiff of his common-law remedy. The remedy given by the statute was merely *cumulative:* "If a statute gives a remedy in the

affirmative, (without a negative expressed or implied,) for a matter which was actionable by the common law, the party may sue at the common law as well as upon the statute, for this does not take away the common law."—1 *Comyn's Dig.* 447, *letter C*; 1 *Chitty's Pleading*, 144 ; *Rex* vs. *Robinson*, 2 *Burrow's Rep.* 803 ; 1 *Saunders Rep.* 136, *note* 4 ; *Crittenden* vs. *Wilson*, 5 *Cowen's Rep.* 165 ; *Scidmore* vs. *Smith*, 13 *John. Rep.* 322 ; *Farmer's Turnpike* vs. *Coventry*, 10 *John. Rep. marginal page* 389 ; *Almy* vs. *Harris*, 5 *John. Rep.* 175.

Such we believe to have been the common law, at the time of the enactment of our adopting statute in 1784, and the giving of *notice* to the defendants by the plaintiff, that he considered himself aggrieved by their *exclusive* appropriation of his private property for the use of the road, was not necessary to enable him to maintain his common-law remedy of trespass in ejectment, for the premises thus exclusively appropriated without his consent. The statute under which the defendants claim, being in derogation of a common-law right, must be strictly construed.

We are, therefore, of the opinion, the court below erred in its charge to the jury : " that as no such notice had been given, the plaintiff could not in law recover ;" inasmuch as the plaintiff's common-law right of action of trespass in ejectment, did not depend on such notice being given, and ought not to have been controlled thereby. Considering the title of the defendants, independent of the deeds of conveyance, and as depending on their charter alone, our conclusion is, that the charter which provided for the assessment of damages for lands taken for the use of the road, did not take away the common-law remedy of the plaintiff, to maintain his action of trespass in ejectment for the seizure and appropriation of his private property, for the *exclusive use* of the road, and notice to the defendants that he was aggrieved thereby was not necessary to enable him to maintain such action. To have authorized the defendants to have acquired the fee-simple title to the premises in dispute, or in depriving the plaintiff thereof, and appropriating the same for the *exclusive use* of the road, under their charter, it was incumbent on them, not only to have shown by their plea, but to have proved on the trial, that they had complied with that provision in their charter which requires *adequate security* to be given by them to the plaintiff, who is the landholder, to pay such damages as might be assessed, in the manner pointed out thereby. Without such compliance on their part, they had no right under the Constitution to take the *private property* of the plaintiff for the *use of the public ;* for that is the only "*just compensation*" provided for the landholder whose property is taken, except, perhaps, *a right of action and judgment against the company alone.*

Let the judgment of the court below be reversed, and a new trial granted.