## CRESWILL v. GRAND LODGE KNIGHTS OF PYTHIAS OF GEORGIA.

### ERROR TO THE SUPREME COURT OF GEORGIA.

No. 235.   Argued May 2, 3, 1912.—Decided June 10, 1912.

Where defendant sets up the claim that it enjoys right or privilege sought to be enjoined under authority of an act of Congress and the state court denies the right, the judgment is reviewable here under § 237 of the new Judicial Code (§ 709, Rev. Stat.).

Whether persons have a right to be incorporated in a State as a state branch of an organization incorporated in the District of Columbia under an act of Congress is a non-Federal question.

*Quære:* Whether the principles applicable to use of trade-marks and trade-names are applicable to the use of names of fraternal organizations having a main organization with branches in the several States.

The doctrine of laches applies to the use of a name of a fraternal corporation and equity will not grant relief against the use of the name by parties who have been using it for many years without objection, at the instance of the older organization, there not appearing to be any fraud or intent to deceive the public.

While this court does not as a general rule review findings of fact of the state court on writ of error, where a Federal right has been denied as a result of a finding of fact and it is contended there is no evidence to support that finding and the evidence is in the record, the resulting question is open for decision; and where a conclusion of law as to a Federal right and a finding of fact are so intermingled as to require the facts to be analyzed and dissected so as to pass on the Federal question this court has power to do so.

In this case *held* that:

There was no evidence to support a finding that the defendants below were attempting by their application for incorporation in a State to use the name Knights of Pythias so as to deceive the public and work pecuniary damage to the older organization of that name, the complainant.

The long-continued acquiescence of the older organization of the Knights of Pythias in the use of the name by the junior organization prior to the attempt of the latter to have this par-

ticular state branch incorporated amounted to laches and under such conditions equity could not grant relief.

The existence of laches in this case is incompatible with a finding of injury to property and deceit to the public.

133 Georgia, 837, reversed.

THE facts, which involve the right of two associations to use the name "Knights of Pythias" and to be incorporated thereunder in one of the States, are stated in the opinion.

*Mr. Alton B. Parker* and *Mr. C. L. Pettigrew*, with whom *Mr. Samuel A. T. Watkins* was on the brief, for plaintiffs in error:

Defendants in error are not entitled to the relief sought, on account of their own acquiescence in the use by the plaintiffs in error of the name under which they were chartered. They could have made the question in 1880, when the first lodge was organized, and subsequently in 1886, when the first subordinate lodge was organized in Georgia, and in 1889 when the charter was granted under the same law that granted the charter of the defendants in error, all of which were done in the open and with the knowledge of the defendants in error, who uttered no word of complaint for over a quarter of a century or until the application for a charter was made in 1906.

No principle in equity is better established than that the right of action is lost by laches.

In *Ancient Order of United Workmen* v. *Graham,* 96 Iowa, 592; *S. C.,* 31 L. R. A. 113, a lapse of ten years was held to bar a benevolent association from an injunction. See also, Thompson on Corporations, 8192, 8196; Bacon on Benefit Societies, 1904, § 48A; *Burke* v. *Bishop,* 144 Fed. Rep. 838.

For other cases in which the right to enjoin was lost by laches, see *Grand Hive L. O. M.* v. *Supreme Hive L. O. M.,* 97 N. W. Rep. 779; 9 N. W. Rep. 26; 88 N. W. Rep. 882; *Holt* v. *Parsons,* 118 Georgia, 895; *Walker* v. *Phillips,*

120 Georgia, 728; *Reynolds* v. *Martin*, 116 Georgia, 495; *Hollingshead* v. *Bank*, 104 Georgia, 250; *Marshall* v. *Means*, 12 Georgia, 61; *Atkins* v. *Hill*, 7 Georgia, 573; *Waterlot Co.* v. *Bucks*, 5 Georgia, 315; *City of Elberton* v. *Pearl Mills*, 123 Georgia, 1; *Whitley* v. *James*, 121 Georgia, 521; *McWhorter* v. *Cherry*, 121 Georgia, 541; *Cole* v. *Burke*, 35 Georgia, 280; *Knox* v. *Yow*, 91 Georgia, 367.

As to the doctrine of laches, no arbitrary rule exists, but the question is decided upon the circumstances of each case. 16 Cyc. 152, and cases cited.

Lapse of time alone, and together with circumstances, especially circumstances injuring the defendant, preclude relief. Prejudice to defendant precludes relief where the change in circumstances is due to the voluntary act of defendant, or the result of delay itself. If plaintiff sleeps on his rights until the progress of events and change of circumstances render it impossible to grant relief with equal justice to defendants, he is guilty of laches. 16 Cyc. 162, and cases cited; *Prince Metallic Paint Co.* v. *Prince Mfg. Co.*, 57 Fed. Rep. 938; *Boston Rubber-Shoe Co.* v. *Boston Rubber Co.*, 149 Massachusetts, 436; *Colonial Dames* v. *Colonial Dames*, 60 N. Y. Supp. 302; *S. C.*, 173 N. Y. 586; *Richards* v. *McKall*, 124 U. S. 183; *Sullivan* v. *Portland R. Co.*, 94 U. S. 806.

*Mr. Hamilton Douglas* and *Mr. John P. Ross* for defendants in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

A secret fraternal and benevolent order known as the Knights of Pythias was organized as a voluntary association in Washington, District of Columbia, in 1864. Pursuant to the authority conferred by an act of Congress approved May 5, 1870 (16 Stat. 98, c. 80), authorizing the formation of corporations in the District of Columbia,

the persons composing the Supreme Lodge, the governing body of the order, became incorporated as the Supreme Lodge Knights of Pythias by filing in the proper office the certificate required by the act. Among other things required to be stated in the certificate was the name or title by which the society was to be known in law and the particular business and objects of the society. The statute provided that upon the filing of the certificate the persons signing and acknowledging the same, and their associates and successors, "shall be a body politic and corporate, by the name stated in such certificate; . . ." The life of the corporation thus created, it would seem, expired by limitation in 1890. On June 29, 1894 (28 Stat. 96, c. 119), however, by a special act of Congress, the Supreme Lodge was again made a corporation of the District of Columbia by the name of the Supreme Lodge Knights of Pythias, and still exists as such. Membership in the order is restricted to white males. In addition to a Grand Lodge and subordinate lodges in each State to which it has been extended, the order conducts an insurance branch known as the Endowment Rank and a military branch known as the Uniform Rank. The Grand Lodge of Georgia was instituted by the Supreme Lodge on March 20, 1871.

An order of Knights of Pythias of the same general nature as that above described, consisting of members of the colored race, was established in Mississippi on March 26, 1880. It became a corporation of the District of Columbia on or about October 10, 1889, by virtue of the general incorporation act of Congress of May 5, 1870, already referred to, under the name and style of "The Supreme Lodge Knights of Pythias, North and South America, Europe, Asia and Africa." The order was introduced into Georgia in June, 1886, and a Grand Lodge was instituted in that State by the Supreme Lodge on December 15, 1890. The corporation of October 10, 1889,

was reincorporated December 14, 1903, under the same general law of May 5, 1870, by the name of "Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia." After such reincorporation, on January 15, 1905, the Supreme Lodge issued a new charter to the Grand Lodge of Georgia.

The Supreme Lodge of Knights of Pythias which as heretofore stated was finally incorporated in 1894 by special act of Congress, the Grand Lodge of Georgia, which was subject to its jurisdiction, and the officers of such Grand Lodge were parties complainant in an amended petition in this litigation commenced in the Superior Court of Fulton County, Georgia. The defendants were the officers of the Grand Lodge in Georgia of the other body, who had made application to the court in which this suit was commenced to be incorporated as a domestic corporation of Georgia under the name and style of "The Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia, jurisdiction of Georgia." The petition filed in the cause recited the organization of the order of the plaintiffs substantially as heretofore stated, and the defendants were alleged to be wrongfully attempting to incorporate under a name which infringed that of plaintiffs' order, and to be unlawfully styling themselves Knights of Pythias, and to be fraudulently using the insignia, emblems, etc., of the plaintiffs' order. The averments of the petition and the amended petition as to damage sustained by the alleged unlawful acts of the defendants and their associates were stated in general terms to constitute a wrong and injury to petitioners and to the membership in Georgia and to be a fraud upon the public. The relief prayed was in substance a permanent injunction enjoining the prosecution of the application for incorporation, and the use by the defendants and the members of the subordinate lodges under their jurisdiction of the name Knights of

Pythias and of other names, insignia, emblems, etc., which would be like or a colorable imitation of those in use by the plaintiffs' order.

By their answer the defendants put the plaintiffs to proof of the material averments of the petition, set up the origin, growth and purposes of the order of which they were members and especially stated that it was confined to the "negro race and the Asiatic races." The incorporation of the order under the general incorporation act of Congress of 1870 was also averred, and the claim was made of lawful right to the use of the names, signs, symbols, emblems, insignia and the other paraphernalia adopted by the corporation, and the good faith of the corporation and all concerned in the matter was averred. It was further stated that the membership of the order in the United States aggregated 80,747 and in the State of Georgia 11,805, and that there never had been an attempt to confuse the order with that of which the plaintiffs were members and that no such confusion in fact had ever arisen or could arise, the field of operation of the orders being absolutely different. Laches of the plaintiff was pleaded in bar of any relief on the ground that the existence of the order and its operations had been publicly known and was matter of common knowledge for many years.

The case came on for hearing on a motion for preliminary injunction, and after hearing the evidence and argument of counsel the court denied an injunction and quashed a preliminary restraining order. The plaintiff took the case by a bill of exceptions to the Supreme Court of Georgia. That court in disposing of it referred to the fact that the Supreme Lodge of the order represented by plaintiffs was a corporation of the District of Columbia and that by amendment of the petition it had been joined as a plaintiff. It further stated:

"That the defendants have been operating and are

seeking to be incorporated in this State under a name which is claimed to be an infringement of the name of the plaintiff's association, and the question is involved whether and how far the plaintiff, which is a foreign corporation, might be affected by the State's granting a charter to the defendants as a domestic corporation in the name and for the purpose asked, and also whether there is a fraudulent purpose or design to so infringe."

It was next observed that "the presiding judge should have enjoined the defendants from obtaining the charter applied for, so as to preserve the status in respect thereto until, on final jury trial, all of the questions of law and fact can be fully adjudicated." The court held that error had been committed in refusing to grant an injunction as to the charter applied for," and the "ruling of the Chancellor denying the injunction in other matters" was allowed "to stand until the final trial or further order of court, leaving open all the other questions for future determination." 128 Georgia, 775. There followed a hearing of the case before the court and a jury, and evidence, both oral and documentary, was introduced. The evidence showed, without contradiction, that in addition to being incorporated as stated in the answer, the defendant order had also organized on May 24, 1905, as a fraternal beneficial association by its corporate name under the insurance laws of the District of Columbia; that the laws enacted by the order were such as were common to a fraternal body; that the rituals of the order and its emblems, flags, badges, pins and jewelry adornment were on public sale free to be purchased by anyone; that the membership of the order throughout the United States aggregated 300,000; that there had been collected and disbursed to the members of the order between July 1, 1906, and July 1, 1907, more than $500,000; that the collections in Georgia during the existence of the order there aggregated $180,232.21; that there had been paid

to the widows and orphans of deceased members in Georgia $148,680, and that the collections in Georgia aggregated $51,000 a year, excluding the expense of burying their dead which was $9,000 more. After instructing the jury as to the law deemed to be applicable and observing that the case was of a character wherein the law provided that questions might be propounded to be answered by the jury, such answers to stand as their verdict, the court submitted fourteen questions to be answered by the jury. The questions, with the answers given, are copied in the margin.[1]

---

[1] (*Questions & Verdict.*)

GEORGIA, *Fulton County:*

(1) Is the proposed corporate name of the defendants an infringement on the name of the plaintiff's association?

Yes.

(2) If it is such an infringement would it affect or injure plaintiff in any property right? If so, what?

Yes, in name.

(3) If so, is there any fraudulent purpose or design 'to (in?) so infringing?

Yes, there is.

(4) Are any of the emblems or insignia of defendants the same as any of those used by plaintiffs, and if so, does such use injure plaintiff in any property right?

Yes.

(5) Has the plaintiff acquiesced in the use by defendants of the name and insignia, &c., and if so, how long?

No.

(6) Is it true that since the organization of the Order represented by petitioners and its introduction into the State of Georgia, it has been called the Order of Knights of Pythias, and that its members have been known as Knights of Pythias or Pythian Knights indifferently?

Yes.

(7) Is it true that "Pythias" is the distinctive word in the name of the Order represented by petitioners, which ordinarily distinguishes it from the name and style of other fraternal orders in the State of Georgia and in the United States?

Yes.

(8) Is it true that the name set forth in defendants' petition for in-

Subsequently a final decree was entered granting the relief prayed by the complainants. A copy of the decree is excerpted in the margin.[1]

corporation is substantially identical with the name and style of your petitioners the Grand Lodge Knights of Pythias of Georgia?

Yes.

(9) Is it true that the name set forth in defendants' said petition for incorporation is a colorable imitation of the name and style of your petitioner, the Grand Lodge Knights of Pythias of Georgia?

Yes.

(10) Is it true that the use by defendants and their associates of the name which they are seeking incorporation would work a fraud upon your petitioners and their associates and the public, in that the name under which defendants propose to incorporate is a colorable imitation of the name of petitioners?

Yes.

(11) Is it true that defendants can not show any organization of any kind until 1880, and until long after the Grand Lodge Knights of Pythias of petitioners was organized in the State of Georgia?

Yes.

(12) Is it true that the use of the word "Pythias" immediately in conjunction with the words "Knights of" in the name under which defendants and their associates are seeking incorporation is a colorable imitation of the name of your petitioner, the Grand Lodge Knights of Pythias of Georgia?

Yes.

(13) Is it true that defendants of the "Supreme Lodge of the Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia" are wearing emblems and insignia identical in color, design and lettering with the emblems and insignia of petitioners, the Grand Lodge Knights of Pythias of Georgia; and is it true that the wearing and use of such insignia and emblems work a fraud upon either petitioner or their associates or the public?

Yes.

(14) Have the defendants used the name Knights of Pythias or the letters K. of P. without any affix or suffix thereto?

Yes.

May 27, 1908. G. W. FOOTE, *Foreman.*

[1] (*Final Decree.*)

GEORGIA, *Fulton County:*

Upon considering the pleadings, evidence and verdict in the above-

Reciting that they were dissatisfied with the verdict of the jury upon the questions submitted, the defendants moved for a new trial upon the ground that the verdict

---

stated case, it is thereupon ordered, adjudged and decreed by the Court as follows:

(1) That the defendants, Chas. D. Creswill, Geo. N. Stoney, Geo. R. Hutto, N. B. Williamson, Columbus J. Smith, Fred. N. Cohen, Boss W. Warren, Geo. W. Brown, Jas. W. Davis, Edwin J. Turner, Garrett Taylor and Lucius L. Lee, and each of them and their associates, confederates and successors, be and they are hereby perpetually enjoined as in said petition prayed, and especially as follows:

A. That said defendants and their associates, confederates and successors are hereby perpetually enjoined from prosecuting their petition for incorporation, and from further proceeding to become incorporated in Fulton County, or elsewhere in the State of Georgia, under the name and style of "The Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia, Jurisdiction of Georgia," or using any name or title embracing the word "Pythias" in immediate conjunction with the words "Knights of," or under any name or title in which the word "Pythias" is the distinctive and cardinal word, or under any name which is substantially identical with, or a colorable imitation of the name of the petitioners, the Supreme Lodge Knights of Pythias and the Grand Lodge Knights of Pythias of Georgia.

B. That said defendants, their associates and successors and each of them be, and they are hereby perpetually enjoined from further using in their voluntary organization said name of the Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia, Jurisdiction of Georgia, and in the conduct of its affairs, using any name embracing the word "Pythias" in immediate conjunction with the words "Knights of," or embracing said word "Pythias" as the cardinal distinctive word of the name or any other name which is substantially identical with or in colorable imitation of the name of the petitioners, the Supreme Lodge Knights of Pythias and the Grand Lodge Knights of Pythias of Georgia. The said defendants, their associates and successors and each of them are further perpetually enjoined from instituting subordinate lodges under the name and designation of the Order of Knights of Pythias, and from further authorizing the continued existence of subordinate lodges under the jurisdiction of said voluntary organization, of which defendants and their associates are members, using the name and designa-

was contrary to the evidence and without evidence to
support it, that it was strongly and decidedly against the
weight of evidence and was contrary to law and the prin-
ciples of equity. Nearly six months afterwards, by leave
of court, defendants amended the motion by adding thirty-
six additional grounds, attacking specifically each of the

tion of Knights of Pythias, or any name in which the word "Pythias"
is the cardinal and distinctive word, or any name which is a colorable
imitation of the name of petitioners, the Supreme Lodge Knights of
Pythias, and the Grand Lodge Knights of Pythias of Georgia, and of
subordinate lodges instituted by said petitioner's authority. And said
defendants, their associates and successors, and each of them, are
further perpetually enjoined from designating and calling themselves,
and from authorizing their associates and members of subordinate
lodges organized and existing by authority of the voluntary organiza-
tion of which said defendants are members to designate and call
themselves Knights of Pythias or Pythian Knights, or any other name
that is a colorable imitation thereof, and from designating their volun-
tary organization or its subordinate lodges by the initials K. P. or K.
of P., and from using a seal which is a colorable imitation of the seal
of the petitioners, the Grand Lodge Knights of Pythias of Georgia,
and from using and wearing emblems and insignia, buttons, pins, rings,
and watch charms which in color and design are substantially similar
to or a colorable imitation of the emblems and insignia, buttons, pins,
rings and watch charms adopted, used and worn by the members of
petitioners, the Supreme Lodge Knights of Pythias and the Grand
Lodge Knights of Pythias of Georgia, and the members of the sub-
ordinate lodges organized by authority of said petitioners; and the
said defendants, and each of them, their successors and associates
are perpetually enjoined from authorizing or permitting the further
use and wearing of such emblems and insignia by members of sub-
ordinate lodges instituted by and existing under the authority of
said voluntary organization of which the defendants are officers and
members.

C. That said defendants and each of them and their associates and
successors be, and they are perpetually enjoined from using the words
Knights of Pythias in immediate conjunction, or the word "Pythias"
as the cardinal distinctive word in any name, or as a designation of
any insurance, military or other branch of the voluntary organization
of which said defendants and their associates are officers and members;

answers to the questions, charging each to be not only contrary to the evidence, but contrary to the charge of the court, and in addition error was alleged in the charge as given and to the failure to instruct the jury as pointed out in some of the specifications of error. The omission to specifically instruct the jury that the defendants claimed

---

and from using any name, flags, emblems, and insignia that are substantially identical with or a colorable imitation of the name, flags, emblems, or insignia of petitioners, the Supreme Lodge Knights of Pythias and the Grand Lodge Knights of Pythias of Georgia, in any insurance and military branches of said petitioners, in connection with any society or corporation of which defendants are officers or members.

(2) In order that the voluntary organization of which the defendants are officers and members may have a reasonable time in which to select and adopt some other name and make such changes in the laws as may be necessary in obedience to this decree, and not hereby disorganize said organization which defendants are members of, or stop its said association from the prosecution of the work in which it is engaged:

It is hereby adjudged and decreed: That the injunction decreed in subsections B and C, paragraph one hereof, shall be in abeyance and no penalty shall be visited upon the defendants, their associates and successors, for disobedience thereof until the first day of June, 1909. And that on and after said first day of June, 1909, this suspension of said injunction shall cease and determine, and said injunction shall be of full and final force and effect, perpetually after said date, and the defendants and each of·them, their associates and successors are and shall be subject to all the pains and penalties provided for any disobedience of said injunction.

(3) That this decree shall have the force and effect of the State's writ of injunction, without issuance of such writ; provided. however, that the writ of injunction, according to the terms of this decree, shall issue out of this court, and be further served upon the defendants and their associates and successors, at any time on motion of petitioners.

(4) That the petitioners have and recover of the defendants all of the costs in this behalf incurred, to wit: —— dollars, to be taxed by the clerk of this court.

In open court, this tenth of June, 1908.

J. T. PENDLETON,<br>*Judge C. S. A. C.*

a right to their name under a charter from the District
of Columbia by virtue of an act of Congress and the an-
swers of the jury to certain of the questions were alleged
to violate defendants' rights under the charter and to be
repugnant to the due faith and credit clause of the Con-
stitution of the United States, and the decree was alleged
also to constitute a violation of the general incorporation
act under which the order of which defendants were a
part had been incorporated. The motion for a new trial
was overruled. A bill of exceptions was soon afterwards
allowed, which was certified to contain "all the evidence"
and the material portions of the record. The case was
then taken by a writ of error to the Supreme Court of
the State, where the judgment was affirmed. 133 Georgia,
837. This writ of error was then prosecuted.

In the trial court, in various forms, plaintiffs in error,
defendants below, invoked the right to the use of its cor-
porate name and the incidental right to the designation
Knights of Pythias and the use of insignia, emblems, etc.,
appropriate to the order. As this right or privilege was
claimed in virtue of the authority to incorporate conferred
by the general incorporation act of May 5, 1870, enacted
by Congress, it constituted a right or privilege claimed
under an authority exercised under the United States
which, being denied by the state court, is reviewable here
by virtue of the provisions of § 237 of the new Judicial
Code, § 709, Rev. Stat. *Dupasseur* v. *Rochereau*, 21 Wall.
130; *Embry* v. *Palmer*, 107 U. S. 3; *Ferris* v. *Frohman*,
223 U. S. 424, 431, and cases cited. The fact that cor-
porations created by the general law of 1870 and the spe-
cial act of Congress of 1894 heretofore referred to derived
their rights and powers under a law of the United States
is recognized in the following cases which were removed
from state courts: *Supreme Lodge Knights of Pythias* v.
*Kalinski*, 163 U. S. 289; *Same* v. *Withers*, 177 U. S. 260,
and *Same* v. *Beck*, 181 U. S. 49.

Whether or not the defendants below and their successors were entitled to prosecute in the state court the application to be made a domestic corporation of Georgia is, in our opinion, plainly a question non-federal in character, and we therefore pass its consideration. The question, however, whether the right or privilege arising from the authority exercised under legislation of Congress was invaded by the decree complained of so far as it forbade the use of the corporate name or a designation containing the distinctive words Knights of Pythias and the use of the emblems and insignia of such order being within our competency to review, we come to the consideration of the question whether the asserted right or privilege was properly denied.

It is manifest from the record that the existence within the State of Georgia of two bodies of Knights of Pythias controlled by corporations of the District of Columbia and the authority exerted over the membership in that State by the governing body of each order was not contrary to any state statute and the Supreme Court of Georgia in determining the right to relief applied what it conceived to be the applicable principles of general law. Speaking in a general sense, it is true to say that the Supreme Court of Georgia deemed the case before it to be controlled by the principles of law applicable to trademarks and trade-names, and in substance held, *a.* That an association whose primary object was fraternal or benevolent, first appropriating and using an arbitrary or fanciful name acquires an exclusive right to the same; *b.* That a subsequent unauthorized use by others of such name or a colorable imitation thereof would be unlawful; *c.* That in the absence of laches if as a result of such wrongful use injury was occasioned to the rightful owner by the unlawful appropriation and use of the name, equity would afford relief. Coming to apply these principles the court held, *first,* that there had been a lawful appro-

priation of the name by the plaintiff corporation, and
an unauthorized and wrongful use thereof by the de-
fendants, indeed, that such use was made "with a fraudu-
lent purpose and design;" *second*, that the unlawful ap-
propriation had inflicted injury upon the property rights
of the lawful appropriator. On this subject, the court
said (p. 844):

"The plaintiffs' order, while primarily fraternal and
benevolent, has certain property and business attributes
and activities, including the acquiring and ownership of
large amounts of property and the conducting of a de-
partment of insurance protection. Under the evidence,
the element of injury is sufficiently shown."

The conclusion of the court that there had been as a
matter of fact no such laches as should prevent a court
of equity from affording relief was thus stated (p. 850):

"Taking into consideration that the subject of con-
troversy in this case is in the nature of a trade-name, and
that the contest is between two secret societies whose
relations to each other, during the period from the ap-
propriation of the name by one to the institution of the
suit for injunction by the other, was not the usual relation
that one person ordinarily sustains to another, we cannot
say that the finding of the jury that the plaintiffs had not
acquiesced in the use of their name by the defendants is not
supported by the evidence. The suit was filed promptly
after the defendants came out into the open and by peti-
tion duly published asked the court to give legal sanction
to their use of the plaintiffs' name."

We do not stop to consider whether the court was right
under principles of general law in applying to organizations
like those here involved the rules applicable to trade-
marks and trade-names and unfair competition in trade,
a subject as to which there is conflict in the decisions,
because under the view we take of the case we propose,
for the sake of argument only, to indulge in the hypothesis

that the conception which the court entertained on the subject was correct. It is indisputable that the court was clearly right, as a matter of law, in holding that a court of equity in any event would not afford relief where there had been such laches as would cause it to be inequitable to do so. *Saxlehner* v. *Eisner & M. Co.*, 179 U. S. 19, 35. The question then is, Can the decree of the court be maintained consistently with the doctrine of laches which the court expounded and which we have accepted as correct beyond all controversy? As the inquiry which we thus state rests upon the premise that all the propositions of law applied by the court are to be taken as correct, it follows that there is no possibility of deciding there was material error unless it is to be found in the application which the court made of the principle of law which it applied to the facts established by the evidence, all of which is in the record in connection with the findings made by the jury. While it is true that upon a writ of error to a state court we do not review findings of fact, nevertheless two propositions are as well settled as the rule itself, as follows: (a) that where a Federal right has been denied as the result of a finding of fact which it is contended there was no evidence whatever to support and the evidence is in the record the resulting question of law is open for decision; and (b) that where a conclusion of law as to a Federal right and finding of fact are so intermingled as to cause it to be essentially necessary for the purpose of passing upon the Federal question to analyze and dissect the facts, to the extent necessary to do so the power exists as a necessary incident to a decision upon the claim of denial of the Federal right. *Kansas City So. Ry. Co.* v. *Albers Comm. Co.*, 223 U. S. 573, 591; *Cedar Rapids Gas Co.* v. *Cedar Rapids, Ib.* 655, 668; *State of Washington ex rel.* v. *Fairchild*, 224 U. S. 510. The contentions here made bring this case under the first category, since the insistence here is that there was not any evidence

justifying the findings made by the court concerning fraudulent purpose, injury to property, deception of the public, etc.

On examining the evidence we are compelled to say we do not think it has any tendency to prove an intent on the part of the defendant order by the adoption of the designation given to their body or the use of the emblems, insignia, etc., employed to make it appear that their order and that of the complainant is one and the same, or that it tends to show that the use of the corporate name or the distinctive words Knights of Pythias and the emblems, etc., of that order operated in any degree to deceive the public or to work pecuniary damage to the complainant order within or without the State of Georgia. But strong as are our convictions as to these subjects, we prefer not to rest our conclusion upon them, but rather to place the decree of reversal which we shall render, upon the application to the facts of the well-settled doctrine on the subject of laches. As we have observed, the court below in considering the facts on that subject made no reference to the evidence, but assumed that it must be that the findings of the jury were sustained by evidence and indulged in the assumption that it was natural to suppose that the long-continued existence and development of the defendant order had not been interfered with by the complainant corporation because not known until the defendants came into the open by making an application to be made a domestic corporation of Georgia. The facts, however, which we have stated concerning the establishment of the order, its lodgment in Georgia, its vast expansion, its years of duration and its volume of transactions were not disputed in any particular whatever, and therefore leave no room for any other but the legal conclusion of laches. This, we think, in the most conclusive way demonstrates the violation of the elementary principles of equity which would result from the enforcement of the in-

junction which the court awarded.   And the conclusion
just stated renders it unnecessary to point out the incom-
patibility between the holding on the one hand that there
was injury to the property rights of the plaintiff corpora-
tion and a deceit of the public arising from the existence
of the defendant order and its activities, and the holding
on the other hand that laches cannot be imputed to the
plaintiff corporation as a result of its inaction during the
many years in which the defendant corporation existed
and exercised its attributes and functions, because the
wrongs thus being publicly inflicted could not be presumed
to have been known until the defendant order came out
into the open by the application for incorporation under
the law of the State of Georgia.

   *The judgment of the Supreme Court of Georgia is reversed*
      *and the cause is remanded for further proceedings not*
      *inconsistent with this opinion.*

   MR. JUSTICE HOLMES with whom concurred MR. JUS-
TICE LURTON dissenting:

   When a Federal right is held by a state court to have
been lost by subsequent conduct that of itself involves
no Federal question I think we are not at liberty to re-
examine the decision unless we can say that the state court
in substance is denying the right.   So it has been held or
strongly intimated as to *res judicata, Northern Pacific R.
R. Co.* v. *Ellis,* 144 U. S. 458, estoppel, *Hale* v. *Lewis,* 181
U. S. 473, the statute of limitations, *Rector* v. *Ashley,* 6
Wall. 142, and laches, *Moran* v. *Horsky,* 178 U. S. 205,
214, 215, *Pierce* v. *Somerset Ry.,* 171 U. S. 641, and the
principle was recognized only the other day in *Gaar, Scott
& Co.* v. *Shannon,* 223 U. S. 468, 470 471.   I do not see the
distinction by which we can review the decision in the
opposite case, where it is held that the right is not lost or
that it cannot be interfered with because of laches on the
other side.   In a case where the state court held that there

was no defense under the statute of limitations or estoppel, the writ of error was dismissed. *Carothers* v. *Mayer*, 164 U. S. 325. I will content myself with saying that I do not see how the decision can be reversed on the ground of laches.

MR. JUSTICE LURTON concurs in this view and is of opinion that the writ should be dismissed.