## Most Worshipful Prince Hall Grand Lodge, etc., v. The Pride of Harrisburg Lodge, etc., et al.

*W. Justin Carter, Jr., Wilbur C. Douglass* and *Joseph Givens,* for plaintiff.

*Walter H. Compton, Irving J. Katz* and *T. R. Eaton,* for defendants.

NEELY, J., December 3, 1951.—This proceeding in equity was instituted on plaintiff's bill of complaint. Plaintiff, an unincorporated association, is a colored Masonic fraternal society. Defendant also is an organization of colored Masons. An amendment was filed to the original bill before answer was made. The matter is now before us on plaintiff's amended bill of complaint, the answer of defendants thereto, and the testimony taken at a hearing duly held on the amended bill and answer.

The amended bill avers that plaintiff "is the only duly constituted Lodge of Prince Hall Masons in the Commonwealth of Pennsylvania"; that it is registered with the office of the Secretary of the Commonwealth under the Act of May 16, 1923, P. L. 246, and that it

has the exclusive right to the "use and display of its emblems, insignia and other paraphernalia". It is averred that defendant is a clandestine, spurious association of individuals not warranted, constituted or recognized by plaintiff grand lodge or "any other Masonic bodies of the United States in affiliation with the plaintiff". It is further averred that defendant and its members have been, now are, and plan in the future unlawfully to use, publish and display the name, title, emblem, badge and other paraphernalia of plaintiff, to the irreparable injury and damage of plaintiff. The amended bill prays that an injunction may issue perpetually restraining defendant and its associate lodges from using and displaying in public these emblems, insignia and other paraphernalia.[1]

Following the filing of plaintiff's amended bill, the Most Worshipful Grand Lodge for the State of Pennsylvania, Free and Accepted Ancient York Masons, National Compact, filed its petition for leave to intervene, alleging therein that it is a legitimate Negro Masonic lodge of State-wide jurisdiction in Pennsylvania, with a large number of subordinate lodges, of which defendant is one. It was averred that petitioner would be affected by any decision of the court in this case. By agreement of counsel, leave to intervene was granted to petitioner by Judge Rupp on August 2,

---

[1] The original bill was filed June 18, 1948, and it was averred therein that defendant was about to hold a convention and parade in the streets of the City of Harrisburg on June 20, 1948. A preliminary injunction was prayed for. The matter was presented to President Judge Rupp who did not grant the injunction but did grant a rule to show cause why preliminary injunction should not issue. The court made no order on this rule, but after hearing did admonish the parties against creating any disturbance or confusion because of the publicity the case had already received. Defendant acceded to the court's suggestions and altered and withdrew its plans for holding the parade. Thereafter, on July 12, 1948, the amended bill of complaint was filed.

1948, whereupon defendant and intervening grand lodge defendant filed their answer to the amended bill of complaint.

By their answer defendants deny that Pride of Harrisburg Lodge No. 16, Free and Accepted Ancient York Masons, original defendant and the subordinate lodge of intervening defendant grand lodge, is a clandestine or spurious association of individuals. It is averred that defendants are now using and plan in the future to use, publish and display the name, title, emblem, badge, button, device and insignia of intervening defendant grand lodge and of the subordinate lodge, original defendant herein, because they have now and for many years have had the lawful right to the use thereof.

The answer avers that Pride of Harrisburg Lodge No. 16, Free and Accepted Ancient York Masons was warranted and constituted by intervening defendant grand lodge in 1930, and that intervening defendant grand lodge for the State of Pennsylvania was warranted by the National Compact of the Most Worshipful National Grand Lodge, Free and Accepted Ancient York Masons in the year 1847. Defendants aver that since these dates they have continuously and openly existed and functioned under the National compact with the knowledge and acquiescence of plaintiff, and allege that therefore they cannot cause injury, damage or loss of prestige to plaintiff.

In new matter it was averred that by a compact of National unity between five [2] grand lodges, two of which were located in Pennsylvania, there was constituted in 1847 the Most Worshipful National Grand Lodge, Free and Accepted Ancient York Masons, Colored, of the United States, and that intervening defendant grand lodge was affiliated, warranted and constituted under this National compact, it being also

---

[2] The testimony indicated four grand lodges made this compact.

averred that all five of the grand lodges that made the compact trace their origin to African Lodge No. 459, chartered under warrant of the Grand Lodge of York, England, in or about the year 1787.

It is further averred under new matter that all lawful Masonic bodies among Negroes in the United States trace their origin from authority granted by African Lodge No. 459. It is averred that intervening defendant Grand Lodge, pursuant to constitution and bylaws adopted in 1847, has had continuous existence, and up to the present time has been exercising all rights, powers, duties and privileges conferred upon it by the National Compact, having 31 grand lodges in as many States of the United States, including intervening defendant in this State.

Defendants ask for affirmative relief under the new matter as pleaded. They pray that plaintiff, its officers, agents and members be permanently restrained and enjoined from asserting exclusive right in the State of Pennsylvania to the name "Masons", and from making false and fraudulent statements to the effect that intervening defendant and its subordinate lodges. and its National grand lodge are spurious and unauthorized Masons among colored people. To this new matter plaintiff filed a replication, stating that the National grand lodge, or National compact, was dissolved in Wilmington in 1877.

### Findings of Fact

1. On March 6, 1775, Prince Hall, a free colored man, was initiated into the Masonic fraternity in British Army Lodge No. 441, holding a warrant from the Grand Lodge of Ireland, and thereafter on March 7, 1784, Prince Hall, along with others, organized African Lodge No. 459 under a warrant from the Grand Lodge of England.

2. Plaintiff, an unincorporated association, is a Masonic organization, recognized as having descent through succeeding Masonic bodies from the original lodge known as African Lodge No. 459 of Boston, Mass.

3. African Lodge No. 459 is the only source of legitimate Negro Masonic Lodges in the United States and those Masonic bodies that can trace their descent to this lodge are considered lawful Masonic bodies of Prince Hall origin.

4. Plaintiff is a grand lodge having jurisdiction in the State of Pennsylvania and is recognized as being of Prince Hall origin in the sense that it was legitimately descended from African Lodge No. 459.

5. Among the subordinate lodges of plaintiff is one located in the City of Harrisburg, known as Chosen Friends No. 43.

6. Intervening defendant, Most Worshipful Grand Lodge of the State of Pennsylvania, Free and Accepted Ancient York Masons, National Compact, has functioned as a fraternal organization in the State of Pennsylvania among colored people since 1825, and is still so functioning; and in the use of the name "Masons" has designated itself as a Masonic order since that date.

7. Intervening defendant claims to be of Prince Hall origin.

8. Pride of Harrisburg Lodge No. 16, Free and Accepted Ancient York Masons, original defendant herein, is a subordinate lodge of intervening defendant Grand Lodge.

9. (a) In the year 1847 there were two Masonic Grand Lodges among colored people in the State of Pennsylvania.

(b) At the instance of the grand master of the Grand Lodge of Massachusetts (Colored), a meeting was held of the duly constituted representatives of

four grand lodges, including the two grand lodges then operating in Pennsylvania.

(c) The purpose of the conclave was to heal certain dissensions that had arisen in the colored Masonic fraternity, with particular reference to conditions existing in Pennsylvania.

(d) As a result of this meeting there was established a National grand lodge, also referred to as National compact, and the two grand lodges of Pennsylvania entered into this compact.

10. From 1847 to 1877, admittedly, the National Grand Lodge functioned as the supreme governing Masonic body in the United States among colored people, and all State grand lodges were subordinate thereto.

11. The intervening grand lodge defendant was one of the two Pennsylvania grand lodges that entered into that compact, and it is claimed by defendants herein that plaintiff was the other grand lodge.

12. It is claimed by plaintiff that the National compact was dissolved in Wilmington in 1877. But on the other hand, it is maintained by defendants that there was no such dissolution. Defendants claim that the separation amounted only to a secession of some grand lodges in certain State jurisdictions.

13. Plaintiff functioned under the National compact from 1847 to 1877, but withdrew its affiliation on this latter date, and thereafter exercised State-wide jurisdiction independent of that National compact.

14. Intervening grand lodge defendant was affiliated under the National compact, and in 1877 and thereafter continued to recognize the compact. It is shown in this record to have functioned since 1877.

15. Plaintiff has 110 subordinate lodges in Pennsylvania with 11,000 members, and the intervening grand

lodge defendant has 27 subordinate lodges with 5,000 members.

16. The intervening grand lodge defendant has functioned since 1825, and between that year and the year 1888 warranted a large number of subordinate lodges; and between the years 1847 and 1888 issued vouchers for the payment of many bills; and subsequent to that latter date did generally carry on its affairs as a fraternal organization under the name which it bears in this proceeding.

17. The National compact in 1847 is clearly established in this record, but it is not established with any degree of certainty whether this compact was dissolved or whether certain lodges merely withdrew their affiliation therefrom.

### Discussion

It is important to bear in mind that the equitable relief for which plaintiff prays is that defendant be enjoined from displaying in public the emblems, insignia and other paraphernalia of the plaintiff. There is no testimony produced by plaintiff to show in what manner, if any, there was any conflict between plaintiff's emblems and insignia and those used by defendants. In fact, no evidence of similarity between the same is shown, except in the very important use of the name "Mason", which of course connotes an ancient and honorable fraternal organization of widespread membership. Plaintiff contends that it is entitled to enjoin defendant from the use of the emblems, insignia and paraphernalia because defendant is a clandestine and spurious organization. The narrow question here is whether under the evidence defendant is shown to be an organization of such nature.

Those colored Masonic bodies that descend from African Lodge No. 459, organized by Prince Hall and others in 1784, are frequently referred to as Masonic

organizations of Prince Hall origin or Prince Hall Masons. It is conceded that those organizations having such a descent are true and legitimate Negro Masonic lodges. The testimony of plaintiff in this case as to its organization and the history of its existence is not entirely satisfactory. However, we have had the benefit of Judge Arnold's opinion in Most Worshipful Widows' Sons Grand Lodge of Ancient Free and Accepted Colored Masons of Pennsylvania Incorporation Case, 160 Pa. Superior Ct. 595 (1947), in which the history of this plaintiff is traced. We do therefore accept the plaintiff's contention that it is a legally constituted grand lodge tracing its descent to African Lodge No. 459.

The question here involved, however, is more than the mere establishment of plaintiff's claim that it did have legitimate Prince Hall origin. Plaintiff's burden, on the basis of the pleadings in this case, is to show that intervening defendant was spurious and clandestine, and that therefore original defendant, its subordinate lodge, was likewise spurious. On this point plaintiff has not made out its case.

The evidence shows that as far back as 1847 there were two grand lodges in Pennsylvania. One of these was intervening defendant, and apparently the other was plaintiff. It is shown that because dissension had arisen, particularly in Pennsylvania, a National compact was formed between the four existing grand lodges, two in Pennsylvania, one in Massachusetts, and one in New York. In this compact a National grand lodge was formed, and for at least 30 years that National grand lodge was the supreme authority among Negro Masons. Plaintiff's contention is that the National grand lodge was dissolved in 1877. However, competent evidence to establish such dissolution does not exist in this record. Defendant, on the

other hand, contended that it was not dissolved and produced some evidence to show the continued existence of that lodge after 1877. It is our considered judgment that while the evidence in this case clearly shows the National compact as having been formed in 1847, the testimony does not with sufficient clarity disclose its dissolution in 1877 or thereafter.

Intervening defendant has continued its fraternal existence after 1877 until the present time. It has had numerous conventions with attending parades and all the other activities associated with such enterprises. These conventions have occurred annually. The record shows communications issued by the National grand lodge long after the alleged date of dissolution.

In contrast to the paucity of evidence in this record in support of plaintiff's contentions, intervening defendant's proof as to its long continued existence is voluminous and well documented. It shows that defendant has been in existence since 1825. There was identified in evidence the book showing the roster of numerous lodges warranted by intervening defendant between the years 1825 and 1888. There was produced a book with voucher stubs showing the payment of bills and accounts as far back as 1847. Both of these important items of evidence were in the custody of intervening defendant's grand secretary. He testified that an examination of the minutes turned over to him as such secretary shows a continuing function of intervening defendant grand lodge from 1880 to date. The constitution and bylaws adopted in 1906 of the intervening defendant were produced in the possession of the secretary.

Intervening defendant's witnesses testified that their organization was of Prince Hall origin. Defendant's proofs in support of this claim are inadequate. However on the question as to whether or not inter-

vening defendant is a clandestine and spurious organization, we must consider its history and its long standing activity as a Masonic group. And under all the evidence intervening defendant grand lodge and original defendant herein are not shown to be clandestine and spurious, in view of the fact that intervening defendant has been engaged in the activities of a Masonic fraternal organization since the year 1825.

In Grand Lodge of Free and Accepted Masons of Maryland, Inc., v. Green et al., 110 Atl. 851 (Md.) (1920), it was sought to enjoin defendant therein in a proceeding in equity from using the name "Masons" or "Free Masons". The bill was against defendant Green as grand master of Free and Accepted York Masons. In that case the Maryland Court of Appeals held that in a suit by one organization to enjoin another organization from using a certain name, equity will not grant relief unless plaintiff's exclusive right to the use of such name is clearly established.

We cannot find under this evidence that plaintiff has established the exclusive right to the name "Masons", nor has it established the right to the use of any particular insignia or emblems. The long continued use of the name "Mason" by this defendant in itself is a strong circumstance tending to show that intervening defendant should be permitted to continue in the use thereof.

Thus in Ancient Egyptian Arabic Order of Nobles et al. v. Michaux et al., 279 U. S. 737, 748 (Texas), (1929), the Supreme Court refused to enjoin a defendant Negro organization from the use of its emblems and insignia on the ground that plaintiff, a white order, was guilty of laches in asserting its claims. The Supreme Court said:

"What we have said of the evidence demonstrates, as we think, not only that there was obvious and long

continued laches on the part of the white order, but also that the circumstances were such that its laches barred it from asserting an exclusive right, or seeking equitable relief, as against the negro order. Creswill v. Knights of Pythias, 225 U. S. 246, 261-263; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 35-37; Piatt v. Vattier, 9 Pet. 405, 416; Hayward v. National Bank, 96 U. S. 611, 617; French Republic v. Saratoga Vichy Co., 191 U. S. 427, 436-437; Benedict v. City of New York, 250 U. S. 321, 328; DuBoulay v. DuBoulay, L. R. 2 P. C. 430, 446."

In Grand Lodge A. F. & A. M. of West Virginia v. Prince Hall Grand Lodge of West Virginia, A. F. & A. M., 90 W. Va. 424, 111 S. E. 309 (1922), an injunction was refused in the case of two colored lodges where each claimed to be the orthodox lodge and where a schism had existed. We might say that the evidence here strongly indicates the existence of a schism. Judge Arnold in his opinion, Most Worshipful Widow's Sons Grand Lodge of Ancient Free and Accepted Colored Masons of Pennsylvania Incorporation Case, supra, made note of the West Virginia case, but did not indicate what the position of the Superior Court would be with respect to a schismatic organization such as that involved in the West Virginia ruling. See also Grand Lodge of the Ancient Order of United Workmen of Iowa v. Graham et al., 96 Iowa 592, 65 N. W. 837 (1896).

As to whether or not intervening defendant was a spurious and clandestine organization, much perhaps would depend upon what actually did happen at the dissolution proceedings in Delaware. That event, however, is shrouded in mystery so far as this record is concerned, and the evidence upon that point is wholly unsatisfactory. We must accept the evidence of the parties as it was adduced in this record. The over-

whelming evidence is that intervening defendant was not clandestine or spurious, but on the contrary its activities have been conducted openly since the year 1825.

For these reasons, we think plaintiff is not entitled to prevail in its bill of complaint, nor do we think defendant is entitled to prevail with respect to the affirmative relief sought on the basis of new matter pleaded in its answer. The necessary evidence to support such affirmative relief has not been adduced in this case.

It is to be noted that in this case Judge Woodside sat as chancellor. In view of Judge Woodside's appointment as Attorney General, the matter is being disposed of by agreement of counsel by the acting chancellor, who did not hear the witnesses but who has carefully read all of the testimony.

In view of the foregoing, we conclude:

1. The evidence does not disclose that defendant is a spurious and clandestine organization.

2. The evidence does not disclose the exclusive right of plaintiff to the emblems, insignia and paraphernalia referred to in the prayer for relief.

3. Plaintiff has not met the burden of proof in this case by the fair preponderance of the evidence.

4. Defendants are not entitled to have affirmative equitable relief as prayed for.

### Decree Nisi

And now, December 3, 1951, it is ordered, adjudged and decreed that plaintiff's bill in equity be and the same hereby is dismissed. The prayer for equitable relief as prayed for by defendant is refused. The prothonotary is directed to enter this decree nisi and notify the parties to this proceeding or their counsel forthwith. The costs of this proceeding shall be paid by plaintiff.