209 F.2d 156
 SUPREME GRAND LODGE, MODERN FREE AND ACCEPTED COLORED MASONS OF WORLD,
v.
MOST WORSHIPFUL PRINCE HALL GRAND LODGE, FREE AND ACCEPTED MASONS, JURISDICTION OF GEORGIA.
 No. 14374.
 United States Court of Appeals Fifth Circuit.
 January 6, 1954.
 
 W. Edward Swinson, Columbus, Ga., Swinson, Elliott & Schloth, Columbus, Ga., for appellant.
 Forrest L. Champion, Jr., Foley, Chappell, Kelly & Champion, Columbus, Ga., for appellee.
 Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.
 RUSSELL, Circuit Judge.
 
 
 1
 This action was instituted by appellee, a Georgia corporation, to enjoin appellant, an Alabama corporation, from engaging in conduct alleged to constitute unfair competition against appellee, and from holding itself out as a Lodge of Freemasons or as a member of the Masonic Fraternity. It was further prayed that appellant be enjoined from using the name "Supreme Grand Lodge, Modern Free and Accepted Colored Masons of the World." After trial to the court without a jury, the court entered findings of fact, conclusions of law and the judgment[1] from which this appeal is prosecuted. This judgment, as later amended, enjoined appellant from appropriating and using the ritual ceremonies, insignia, etc., of appellee and from using the words "Free and Accepted", "Free and Accepted Masons" or "Masons" in connection with its organization.
 
 
 2
 It is contended by appellant that since appellee does not have the "exclusive" right to the use of the words "Free and Accepted" as a part of its Masonic name, as found by the court, and that such right is a prerequisite to the invocation of sections 106-201, 106-202, 1933 Code of Georgia, the court erred in granting the injunctive relief. This argument is predicated upon the theory that the remedy afforded by those statutes is the only remedy available to appellee. The enactment of this statutory remedy for the protection of such organizations as are named therein against the infringement and unauthorized use of their names and emblems merely created a new remedy for an existing right,[2] and did not expressly, or by necessary implication, abrogate the pre-existing remedy. In these circumstances the new remedy is cumulative,[3] and appellee could rightfully, and did, pursue its common-law remedy to enjoin the unlawful use of its name and emblems.
 
 
 3
 With this proposition established there is left the question of the sufficiency of the evidence to support the findings and conclusions of the trial court. Appellant was organized in Alabama in 1917 and was incorporated under the laws of that State in 1921. It has been doing business in Georgia since 1924, although it was not officially authorized to do business in that State until 1950. At the time of the trial appellant was doing business in seventeen states. The present suit relates only to the State of Georgia. During all of this time appellant and its predecessors have been operating without a warrant or charter from any recognized Masonic body, which would be required in order to constitute it a legally existing Masonic organization according to Masonic history and jurisprudence. Appellee was first organized in Georgia in 1866, and was incorporated under the laws of Georgia in 1890, and has enjoyed a continuous existence in Georgia since it was originally organized. Appellant uses substantially the same ceremonies, rituals, insignia, symbols, emblems, signs and paraphernalia as is used by appellee.
 
 
 4
 The voluminous record in this case is replete with evidence which the trier of the facts could find showed that appellant held itself out to the public as a duly authorized and constituted Masonic Lodge and that it intended to, and did mislead the Negro populace of various communities in Georgia where it operated to believe that it was so constituted when in fact it was not. Such conduct, coupled with the adoption and use of a name containing the distinctive words "Free and Accepted Masons" was designed to enable appellant to reap the benefits of the good will which appellee was entitled to enjoy by virtue of its prior appropriation of the words as a part of its name and its long-continued use of them. The finding of the trial court that appellant's adoption of the infringing words as a part of its name was done with intent to deceive and defraud the public is well supported by the evidence, and therefore we do not deem it necessary to consider appellant's contention that such intent must be proved as a prerequisite to the granting of injunctive relief.
 
 
 5
 The claim that appellee's right to injunctive relief is barred by laches was considered and overruled by the trial court, notwithstanding the fact that appellant did not affirmatively plead this defense in its answer,[4] and it was presented only after judgment, when the motion was disallowed. Each case involving the question of laches must be determined according to its own particular circumstances. Bryan v. Willingham-Little Stone Co., 194 Ga. 563, 22 S.E.2d 40; Hughes v. Cobb, 195 Ga. 213, 23 S.E.2d 701. "The question of laches is addressed to the sound discretion of the chancellor, and his decision will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion." Equitable Building & Loan Ass'n v. Brady, 171 Ga. 576, 585, 156 S.E. 222, 226; Mountain Manor Co. v. Greenoe, 205 Ga. 619, 621, 54 S.E.2d 629. While the record discloses that appellant did transact some business in Georgia as early as 1924, the extent of such operations is not disclosed by the record. It was not until 1946, about a year after appellant moved its offices from Phoenix City, Alabama, to Columbus, Georgia, that notice of appellant's operations in Georgia was brought home to appellee. Thereafter, many of the specific acts of infringement and unfair competition complained of by appellee occurred. Under these facts the court was not required to conclude that appellee's delay in instituting this action constituted laches.
 
 
 6
 We are not unmindful of the rights of members of appellant in the burial certificates already issued to them by it. We do not construe the judgment as in anywise disturbing these rights. Furthermore, the injunction granted operates only prospectively, and it is effective only within the territorial limits embraced in the suit, — the State of Georgia.
 
 
 7
 The trial court's findings of fact are not clearly erroneous and the judgment is free from errors of law.
 
 
 8
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 Reported at D.C., 105 F.Supp. 315, and which sets forth the contentions of the parties and the court's findings of fact and conclusions of law
 
 
 [2]
 Lane v. Brothers & Sisters of the Evening Star Society, 120 Ga. 355, 47 S.E. 951; Creswill v. Grand Lodge Knights of Pythias, 133 Ga. 837, 67 S.E. 188, reversed on other grounds, 225 U.S. 246, 32 S.Ct. 822, 56 L.Ed. 1074
 
 
 [3]
 Faisan v. Adair, 144 Ga. 797, 87 S.E. 1080; Cook v. Securities Investment Co., 184 Ga. 544, 549, 192 S.E. 179; Southern R. Co. v. Moore, 133 Ga. 806, 67 S. E. 85, 26 L.R.A.,N.S., 851; Doe, ex dem., Carr v. Georgia Railroad and Banking Co., 1 Ga. 524
 
 
 [4]
 See Rule 8(c), Federal Rules of Civil Procedure, Title 28 U.S.C.A.; Tornello v. Deligiannis Brothers, Inc., 7 Cir., 180 F.2d 553
 
 
 
 9
 HUTCHESON, Chief Judge (concurring in part and dissenting in part).
 
 
 10
 I concur in so much of the opinion as declares that there was sufficient evidence to support the finding and decree that appellant's use in its name of the words "Free and Accepted" should be enjoined.
 
 
 11
 I dissent (1) from so much of it as seems to find that the plaintiff has, while the defendant has not, a warrant or charter from any recognized Masonic body, and (2) from so much of it as affirms the amendment to the decree which enjoins the defendant from using in its orders, by-laws, etc., the word "Masons".
 
 
 12
 I dissent as to the first ground because, as I read the record, there is no basis in the evidence or in the trial court's findings for the view that plaintiff is, and defendant is not, "a legally existing Masonic organization according to Masonic history and jurisprudence."
 
 
 13
 The evidence does show, and the district judge does find "that neither the plaintiff nor the York Masons recognized the defendant as being legally organized and constituted because it has no writ, warrant, or charter from a superior legally existing body", but the evidence does not show and the district judge does not find that the plaintiff has any such writ, warrant, or charter. As a matter of fact the court finds that both plaintiff and defendant trace their legal origin to a charter issued by a state court. The plaintiff was granted a charter in Georgia by the Superior Court of Chatham County in 1890. The defendant was granted one by a court of competent jurisdiction for Jefferson County, Alabama, under the name "Free and Accepted Colored Masons of America".
 
 
 14
 I dissent as to the second ground, the affirmance of the amendment enjoining defendant from using the name "Masons" because there is not in the record, in my opinion, or in the findings of the district judge any basis whatever for depriving defendant of the right granted it by the Alabama court to use the word "Masons", a right accorded them by the Alabama Court and which they have enjoyed in Georgia by actual use for nearly thirty years.
 
 
 15
 The thrust of plaintiff's suit, its whole evidence, was not against the use of the word "Masons", it was against the use of the words, "Free and Accepted". The findings of the judge were not directed against that use, indeed he found that the York Masons and defendant were well disposed toward each other, and he advised that they seek to consolidate.
 
 
 16
 The amendment to the decree which was the result of the filing by defendant, not plaintiff, of a motion for new trial, appears to me to be made out of the whole cloth, without evidence or finding to support it, and contrary to both defendant's legal and equitable right to use the name.
 
 
 17
 As the district court finds, the defendant came into existence about the year 1917, when a group of six or eight persons said to be Master Masons, met and organized. All that he could say for plaintiff was "That plaintiff and its claimed legitimate predecessors, although often not using the exact name presently used, has had a favorable and continuous existence in America since the year 1796."
 
 
 18
 It seems to me in the light of the rule the opinion lays down, that "a warrant or charter from a recognized Masonic body would be required in order to constitute a legally existing Masonic organization according to Masonic history and Jurisprudence" (if that has anything to do with the case), it is the pot calling the kettle black when the plaintiff calls the defendant illegitimate.
 
 
 19
 Upon this record and findings, it seems to me that the claim of bar sinister has no place in this case, and especially not in the left handed way it came in by the granting of an injunction on a motion for a new trial without request made for it and without evidence or finding to support it.
 
 
 20
 I respectfully dissent.