## INDEPENDENT ORDER OF GOOD SAMARITANS AND DAUGHTERS OF SAMARIA *et al. v.* MACK *et al.*

1. Where, under the act of 1909 (Civil Code, §§ 1993, 1994), an equitable petition was filed by two benevolent organizations, operating under charters, against another organization of like character, seeking to enjoin the latter from obtaining a charter from the superior court, and from the use of a name which is colorable and of a character imitative of the distinctive and principal words in the name of the plaintiffs' organizations and charters, and on the trial at the interlocutory hearing there was evidence tending to show that the charter of one of the plaintiffs had expired by lapse of time, and the other was antedated by the charters of at least two other similar organizations not parties to the suit, which were chartered and operating in this State also under the distinctive words as a part of their names, as used by the plaintiffs, at the time of the filing of the petition for injunction, the judge did not err in refusing to grant the interlocutory injunction prayed for.

2. In such a case, the burden is upon the plaintiffs' organizations asserting the right to the *exclusive* use of the distinctive name or words in question to show that such is the case. And it is not necessary that the organization actually entitled to the exclusive use of the name in question shall be a party litigant.

MAY 13, 1913.

Petition for injunction. Before Judge Brand. Clarke superior court. November 22, 1912.

The "State Grand Lodge No. 7 Independent Order of Good Samaritans and Daughters of Samaria" and the "Independent Order of Good Samaritans and Daughters of Samaria, United States of America," filed their joint equitable petition for injunction, etc., against the "Benevolent Order of Good Samaritans," and made substantially the following case: One of the plaintiffs, the Independent Order of Good Samaritans and Daughters of Samaria, United States of America, was incorporated under and by virtue of a general act of Congress of May 5, 1870, filing the articles of incorporation on April 24, 1872, in the District of Columbia, and was duly organized as provided by law, and has since been using the above name continuously; the chief aim and object

of this incorporation, as stated in its articles, being "to receive and carry forward the cause of temperance and benevolence in such a complete and effectual manner that all may receive and enjoy its healing influences; to provide for the sick and distressed, the widow and the orphan in their affliction; to elevate the living and bury the dead of the Society; and generally, by love seeking, may spread the principles of Love, Purity, Truth, [1] and Humanity throughout the Globe." This plaintiff was rechartered on the 24th day of April, 1892. The other plaintiff, the State Grand Lodge No. 7 Independent Order of Good Samaritans and Daughters of Samaria, was chartered and incorporated under the laws of Georgia in the fall of 1908 by the superior court of Clarke county, and under and by authority of the Supreme Grand Lodge, having applied for and obtained its charter by permission and under the authority of the Supreme Grand Lodge. Prior to obtaining the last-named incorporation it had been operating under the jurisdiction and dispensation of the State Grand Lodge of South Carolina. The objects of this lodge are the same as those of the parent lodge organized in the District of Columbia. The membership of these organizations is composed entirely of colored people, both men and women. The organization is generally known and called the "Good Samaritans." There are 10,000 members in the State of Georgia, and some 100,000 or more in the United States. It is a fraternal and benevolent order, with a ritualistic form of procedure, and is very favorably known by the colored people, etc. James Mack and the other defendants against whom the injunction was prayed applied to Clarke superior court for a charter under the name of "Benevolent Order of Good Samaritans." It is averred that the defendants have combined and conspired among themselves to form another association under the above name, and that the name is colorable and imitative of the character of the name that "controls and the uses made" of the name by the plaintiffs, and is an infringement upon the corporate and trade name of the plaintiffs' associations, and would create great confusion and injury to plaintiffs' order, which is composed exclusively of colored people, many of whom are ignorant and illiterate and will not readily be able to distinguish the technical differences between names, and more particularly in view of the fact that plaintiffs' associations are generally known among their members and by the public

as "Good Samaritans." If defendants' association is allowed to be chartered and to carry on its business as advertised, it will be known, as intended to be known, as "Good Samaritans," the words "Good Samaritans" being the principal and distinctive words in the title, little attention being paid to the prefixes and suffixes. With this end in view some of the defendants, who are largely dissatisfied members of plaintiffs' subordinate lodges, are already seeking to dissatisfy not only the members of plaintiffs' associations, but whole lodges, and are trying to induce them to attempt to withdraw from the plaintiffs' associations and to secede and join defendants in their illegal and fraudulent scheme to disrupt and injure plaintiffs. Under the plaintiffs' articles of incorporation the principal and distinctive words are "Good Samaritans;" by judicious, just, and fair administration of the affairs of the associations very considerable property, real and personal, has been acquired, of the value of thousands of dollars; and if defendants are allowed to proceed, it would greatly injure and have a tendency to mislead and deceive the public and the members of plaintiffs' associations, etc. The prayer was, that the defendants be restrained and enjoined from proceeding further with the application for charter under the name of "Benevolent Order of Good Samaritans," or under any similar name and style which would be imitative or colorable of the name of plaintiffs' associations, and from attempting to organize under said name or any similar name, whether under the charter applied for or not, or from attempting to dissatisfy or interfere with plaintiffs' subordinate lodges or the members thereof, or with the business of plaintiffs' associations.

The defendants in their answer admit seeking incorporation, but deny the other material allegations in the petition, and, answering specially, in substance say: that the plaintiffs have acquired no exclusive right to the use of any name or title containing the words "Good Samaritans;" that at least four other associations and corporations have acquired a prior right to use a name and style containing the words "Order of Good Samaritans;" that the plaintiffs themselves are infringers upon the rights of other associations and corporations which had adopted, before any of the plaintiffs had done so, a name practically identical with the names of the two plaintiffs who claim to be corporations; that the following named associations and corporations have used and appropriated

names practically identical with that of the plaintiffs in this case, namely: (1) An association known as The National Grand Lodge Independent Order of Good Samaritans and Daughters of Samaria was organized in New York City in 1847, and has been operated under that name continuously since in the United States and the State of Georgia, and in other States of the Union, and its purposes are practically the same as those declared and professed by plaintiffs. (2) On the 3d day of February, 1908, "The National Grand Lodge of the Independent Order of Good Samaritans and Daughters of Samaria of North America" was incorporated under the laws of the District of Columbia, and has continuously since been operating its business, which is practically the same as that of the plaintiffs, under that name. (3) On the 14th day of October, 1891, Smith W. Easley Jr. and his associates were by the General Assembly of Georgia incorporated under the name and style of "The Grand Lodge of the Independent Order of Good Samaritans and Daughters of Samaria of Georgia," and have continuously since that time been operating and conducting their business under said name, the purposes of which are practically the same as those declared and professed by plaintiffs. (4) On the 15th day of April, 1898, John M. Pace and his associates were incorporated by the superior court of Clarke county under the name and style of "Mt. Zion Lodge No. 19 of the Independent Order of Good Samaritans and Daughters of Samaria of the United States of America," and have since said date continuously conducted their business under said name and style, and the purposes of the corporation are practically the same as those declared by the plaintiffs. It is further averred, that so far as one of the plaintiffs, the "Independent Order of Good Samaritans and Daughters of Samaria, United States of America," is concerned, which claimed that it took out articles of incorporation under a general act of Congress by filing its articles of incorporation on April 24, 1872, if such articles were filed on the last-mentioned date, so as to make that particular petitioner a corporation, its charter expired by limitation on the 24th day of April, 1892, under the terms of the act of Congress referred to; and that this plaintiff, if ever a corporation, is no longer one. The plaintiff "State Grand Lodge No. 7 Independent Order of Good Samaritans and Daughters of Samaria" is antedated as a corporation by the three other corpora-

tions named above, which have been using their names and styles continuously since the dates of their respective incorporations. The plaintiff last above named was not incorporated until December 18, 1908, and the corporation next before the last named was chartered in the District of Columbia at least six months before the plaintiff; and while that was a foreign corporation, it had been doing business in the State of Georgia for many years before the "State Grand Lodge No. 7 Independent Order of Good Samaritans and Daughters of Samaria" claims to have been incorporated, and the corporation chartered by the Georgia legislature and the corporation chartered by the superior court of Clarke county in the year 1908 were domestic corporations carrying on their business at the time when the "State Grand Lodge No. 7 Independent Order of Good Samaritans and Daughters of Samaria" claims to have been incorporated. By reason of the facts above set forth, the plaintiffs, or either of them, have no property rights in any name or style containing the words "Order of Good Samaritans," by which they have a legal or equitable right to prevent defendants from being incorporated by the superior court of Clarke county under the name of "Benevolent Order of Good Samaritans."

The judge rendered a decision to the effect that the charter granted in the District of Columbia, on April 24, 1872, to the Supreme Lodge of the Independent Order of Good Samaritans and Daughters of Samaria in America, subsequently rechartered under the name of Supreme Grand Lodge of the Independent Order of Good Samaritans and Daughters of Samaria of the United States of America, on April 25, 1892, expired by limitation on April 25, 1912, and, as the corporate existence of the same was not extended as provided by the act of Congress, that the charter lapsed and the corporation became extinct on the last-named date. It was further adjudged that neither of the plaintiffs had such vested or exclusive right to the name "Good Samaritan" as to authorize the granting of an injunction, even though the corporate name asked for by the defendants be substantially similar to that used by the plaintiffs. The plaintiffs excepted to the order refusing to grant the injunction prayed for.

*Holden & Shackelford* and *E. K. Lumpkin,* for plaintiffs.
*Cobb & Erwin,* for defendants.

HILL, J. (After stating the foregoing facts.) This case turns upon the question whether the plaintiffs, or either of them, have the right to the exclusive use of the distinctive name "Good Samaritans" as a part of their chartered name. The act of 1909 (Civil Code, § 1993) is as follows: "No person or organization shall assume, use, or adopt, or become incorporated under, or continue to use the name and style or emblems of any benevolent, fraternal, social, humane, or charitable organization previously existing in this State, and which has been incorporated under the laws of this or any other State, or of the United States, or a name and style or emblem so nearly resembling the name and style of such incorporated organization as to be a colorable imitation thereof. In all cases where two or more of such societies, associations, or corporations claim the right to the same name, or to names substantially similar, as above provided, the organization which was first organized and used the name, and first became incorporated under the laws of the United States or of any State of the Union, whether incorporated in this State or not, shall be entitled in this State to the prior and exclusive use of such name; and the rights of such societies, associations, or corporations, and of their individual members shall be fixed and determined accordingly." And § 1994 declares: "Whenever there shall be an actual or threatened violation of the provisions of the preceding section of this Chapter, the organization entitled to the exclusive use of the name in question, under the terms of said section, shall have the right to apply to the proper courts for an injunction to restrain the infringement of its name and the use of its emblems; and if it shall be made to appear to the court that the defendants are in fact infringing or about to infringe the name and style of a previously existing benevolent, fraternal, social, humane, or charitable organization in the manner prohibited in said section, or that the defendant or defendants are wearing or using the badge, insignia, or emblems of said organization, without the authority thereof and in violation of said section, an injunction be issued by the court under the principles of equity, without requiring proof that any person has been in fact misled or deceived by the infringement of such name, or the use of such emblem." No question is raised by any party to this case as to the validity of the act of 1909, supra, but each apparently concedes its validity and bases its case upon

it. Nor is any question raised by the record as to the organizations which were chartered prior to those of the plaintiffs being estopped on account of laches.

Counsel for the plaintiffs, in their argument before this court, contend that "the question of discretion on the conflicting evidence is *not involved* in this case; but it is a question of law." The question turns largely upon the construction of the act of 1909. The first section of that act provides that "In all cases where two or more of such societies, associations, or corporations claim the right to the same name, or to names substantially similar, as above provided, the organization which was first organized and used the name, and first became incorporated under the laws of the United States or of any State of the Union, whether incorporated in this State or not, shall be entitled in this State to the prior and exclusive use of such name." From this it appears that the only organizations entitled to the exclusive use of the name in question are those which have been "incorporated." (See the two sections quoted above.) It becomes material, therefore, to ascertain whether the plaintiffs or any of the organizations considered in this case were or were not incorporated at the commencement of this suit. Prior to the act of 1909 organizations of the kind under consideration, whether *chartered* or not chartered, were entitled to injunctive relief where there was an infringement upon the use of a trade name. *Whitley Grocery Co.* v. *McCaw Mfg. Co.*, 105 *Ga.* 839 (32 S. E. 113); *Creswill* v. *Grand Lodge, etc.*, 133 *Ga.* 837 (67 S. E. 188, 134 Am. St. R. 231, 18 Ann. Cas 53); *Supreme Lodge &c.* v. *Improved Order Knights of Pythias*, 113 Mich. 133 (71 N. W. 470, 38 L. R. A. 658); 38 Cyc. 694-696. This case is based wholly on the act of 1909, and nothing herein said is to be understood as in any way affecting rights arising under the general law independently of that act. It will be seen from reading section 1994 of the Civil Code, above quoted, that before one organization can prevent another from becoming incorporated under a certain name and style, it must have the right to the *exclusive* use of the name in question. It is provided by that section that "Whenever there shall be an actual or threatened violation of the provisions of the preceding section of this Chapter, the organization entitled to the *exclusive* use of the name in question, under the terms of said section, shall have the right to apply

to the proper courts for an injunction to restrain the infringement of its name," etc. It is insisted by the plaintiffs that this language has application to the relative rights of the parties *litigant,* and not to those organizations collaterally referred to by the defendants. But there is nothing in the act of 1909, as codified above, to so indicate. It would seem to place the burden upon the organization seeking the injunction to show that it has the right to the exclusive use of the name over all other incorporated organizations or persons. Unless, therefore, the plaintiffs have established that they are entitled to the exclusive use of the name or words "Good Samaritans," they are not entitled to the equitable relief sought. To show that they have obtained a charter, or have organized and are using that name, is not sufficient. They must show not only that they have the right to use the name in question, but that they have the *exclusive* right to so use it. According to the statement of facts set out above, it appears that both of the plaintiffs use the distinctive name or words "Good Samaritans," and the defendants likewise, in their proposed charter, use the same words. Have the plaintiffs, therefore, the exclusive right to use the name of "Good Samaritans"? The plaintiffs rely upon a charter granted to "State Grand Lodge No. 7 Independent Order of Good Samaritans and Daughters of Samaria" by Clarke superior court in December, 1908. They also rely upon a charter granted to the "Independent Order of Good Samaritans and Daughters of Samaria, United States of America," under the act of Congress of 1870, and the acts amendatory thereof. They also offered in evidence and rely upon certificates of incorporation granted in the District of Columbia in the years 1872, 1879, and 1892, incorporating the "Independent Order of Good Samaritans and Daughters of Samaria, United States of America," for a period of twenty years. A certificate of reincorporation was granted in April, 1892. The general act of Congress passed on May 5, 1870 (16 U. S. Stat. 101, 102), authorized the incorporation of benevolent associations, etc., within the District of Columbia, for a period of twenty years. This act was amended on April 23, 1884 (22 U. S. Stat. 13), and the words "not exceeding twenty years" were stricken from the act. It is argued that by the very act of amendment the charter of one of the plaintiffs had perpetual existence, unless divested by direct proceedings for that purpose. But to

this contention we can not agree. This plaintiff asked to be incorporated for a term of twenty years from April 25, 1892. It is probable that if it had named a term of fifty or one hundred years, or an indefinite period, the life of the charter would have been for the term named. This plaintiff did not do that, but, instead, named a term of twenty years from the date of the renewal in 1892, and there was no renewal at the expiration of twenty years from that time, so far as the record discloses. The amendment to the original act offered the *opportunity* for a "perpetual charter," or at least for a longer term than twenty years; but the plaintiff did not avail itself of this opportunity and renew its charter at or before the time it expired on April 25, 1912. And we do not think that the act amendatory of the act of Congress of 1870, by merely striking out the words "not exceeding twenty years," operated of itself, without more, to give the plaintiff here dealt with a perpetual charter. There was something for the incorporators to do. They could have the charter renewed for an indefinite term, if they took the proper steps as provided for the renewal of charters; but without such an effort and the renewing of the charter, we think it expired on April 25, 1912, and was legally dead at the time the application for injunction in this case was made. Another thing, the amending act provides how charters for benevolent corporations may be obtained, and one prerequisite is that a certificate in writing shall be filed by those who desire incorporation, in which shall be stated, among other things, "the *term* for which it is organized." 23 U. S. Stat. 13. Later this seems to have been enlarged so as to read, "the term for which it is organized, which may be perpetual." 31 U. S. Stat. 1283. But this plaintiff in 1892, when its charter was about to expire, had it renewed for a definite term of twenty years from April 25, 1892. It might have named a longer term, for the twenty-year limitation had been repealed. It might have named a "perpetual" term, and thus obtained a perpetual charter, as insisted by plaintiffs. But it did not name a term longer than twenty years, and there was no renewal of the charter at the expiration of the second twenty years. We do not think that the mere repeal of the twenty-year limitation to the life of a charter, or the right to have a perpetual charter if the proper steps are taken to secure it, is self-executing so as to extend the life of the charter beyond the term which is named in

it. For these reasons we think the charter lapsed on April 25, 1912.

The defendants introduced evidence tending to show that there was organized in 1847 a voluntary association under the name of "National Grand Lodge Independent Order of Good Samaritans and Daughters of Samaria," which has been doing business under that name since the above date. And on October 14, 1891, the General Assembly of the State of Georgia passed an act granting a charter to "The Grand Lodge of the Independent Order of Good Samaritans and Daughters of Samaria of Georgia," for a term of thirty years. Acts 1890-91, vol. 1, p. 504. This order has been doing business under this last name continuously since the charter was granted. On January 31, 1908, the "National Grand Lodge of the Independent Order of Good Samaritans and Daughters of Samaria of North America" was incorporated under the laws of the District of Columbia, and has since been in operation continuously under that name. These three associations and corporations seem to be distinct and separate from the plaintiffs, and yet each has the distinctive words or name "Good Samaritans" identical with the distinctive words "Good Samaritans" as contained in the charters of the plaintiffs in error. The plaintiff which was chartered by the superior court of Clarke county in December, 1908, namely, "State Grand Lodge No. 7 Independent Order of Good Samaritans and Daughters of Samaria," is, under the ruling above made, the only one which remains to be dealt with, and its charter was antedated by the two other charters and organizations above referred to, namely, "The Grand Lodge of the Independent Order of Good Samaritans and Daughters of Samaria of Georgia," which was incorporated, as above set forth, by the General Assembly of Georgia in 1891; and the other organization, chartered under the laws of the District of Columbia on January 31, 1908, namely, "The National Grand Lodge of the Independent Order of Good Samaritans and Daughters of Samaria of North America."

In view of the entire record in this case, to which we have given very careful consideration, we hold that the plaintiffs, or either of them, have no right to the exclusive use of the name "Good Samaritans." The evidence tends to show that at least two of the organizations above specified were chartered, organized, and are using the words "Good Samaritans," and it can not be held, in

view of these facts, that the plaintiffs have the right to the exclusive use of the name in question. They do not come within the terms of the act of 1909. The case of *Lane* v. *Evening Star Society,* 120 *Ga.* 355 (47 S. E. 951), and the other cases cited by the plaintiffs in error, were decided before the approval of the act of 1909. *Judgment affirmed. All the Justices concur.*