GRAVES *et al. v.* DISTRICT GRAND LODGE NO. 18, etc.

Since the passage of the act of 1909 (Civil Code of 1910, §§ 1993,. 1994), the right to the exclusive use of a particular · name as between incorporated associations organized for beneficial and charitable purposes, etc., depends upon priority of the act of incorporation, whether the charter be derived from this State, the United States, or any other State in the Union. As a general rule appertaining to fraternal, charitable, and beneficial associations, the right to use a particular name for the association is dependent upon the prior use of the name in question, or one so similar thereto as to lead to confusion, regardless of whether such association is incorporated or not. A fraternal order by adopting the same name which was previously used by a fraternal association acquires no ˙ additional right to the use of the name by incorporation. Incorporation in this State does not give the fraternal corporation an exclusive right to use its corporate name as against a prior use of the same name by a fraternal association incorporated under the laws of a sister State.

No. 3218.   FEBRUARY 20, 1923.   ADHERED TO ON REHEARING, MARCH 3, 1923.

Equitable petition. Before Judge George L. Bell. Fulton superior court. February 28, 1922.

*Colquitt & Conyers,* for plaintiffs in error.

*Rosser, Slaton & Hopkins, Branch & Howard,* and *Brandon & Hynds,* contra.

RUSSELL, C. J. The District Grand Lodge No. 18, Grand United Order of Odd Fellows of America, Jurisdiction of Georgia, a corporation chartered and organized under the laws of the State of Georgia, brought an equitable petition against A. Graves and others as individuals, and as representatives of a class associated with them, living in different counties of the State, to enjoin them from using the name of the plaintiff corporation, from holding meetings, organizing and maintaining an order using such name, and for other equitable relief. The case was referred to an auditor. In his report the auditor found that the appropriation by the defendants of the name of the plaintiff corporation was without authority of law, and that the plaintiff was entitled to an injunction. Exceptions of law and of fact were filed to the auditor's report. These exceptions were overruled by the trial judge, and a decree was entered enjoining the defendants from the use of the name of the plaintiff. From this decree the case was brought to the Supreme Court.

We think the trial judge erred in granting an injunction in the present case. That there is provision for injunctive relief in a

proper case against the use by any corporation or association organized for beneficial or fraternal purposes of the name of another is not to be doubted. However, we think the only real issue in the present case is controlled by sections 1993 and 1994 of the Code of 1910. "No person or organization shall assume, use, or adopt, or become incorporated under, or continue to use the name and style or emblems of any benevolent, fraternal, social, humane, or charitable organization previously existing in this State, and which has been incorporated under the laws of this or any other State, or of the United States, or a name and style or emblem so nearly resembling the name and style of such incorporated organization as to be a colorable imitation thereof. In all cases where two or more of such societies, associations or corporations claim the right to the same name, or to names substantially similar as above provided, the organization which was first organized and used the name, and first became incorporated under the laws of the United States or of any State of the Union, whether incorporated in this State or not, shall be entitled in this State to the prior and exclusive use of such name; and the rights of such societies, associations, or corporations, and of their individual members shall be fixed and determined accordingly. Whenever there shall be an actual or threatened violation of the provisions of the preceding section of this chapter, the organization entitled to the exclusive use of the name in question, under the terms of said section, shall have the right to apply to the proper courts for an injunction to restrain the infringement of its name and the use of its emblems; and if it shall be made to appear to the court that the defendants are in fact infringing or about to infringe the name and style of a previously existing benevolent, fraternal, social, humane, or charitable organization in the manner prohibited in said section, or that the defendant or defendants are wearing or using the badge, insignia, or emblems of said organization, without the authority thereof and in violation of said section, an injunction be issued by the court under the principles of equity, without requiring proof that any person has been in fact misled or deceived by the infringement of such name, or the use of such emblem."

In the multitude of cases cited by counsel for both parties no Georgia case has been cited directly upon the point. However,

we think that the construction placed upon the provisions of sections 1993 and 1994 above quoted, in *Independent Order of Good Samaritans etc.* v. *Mack,* 139 *Ga.* 835 (78 S. E. 336), covers the case sub judice, and is controlling. In the *Mack* case this court had before it the precise question as to the exclusive use of a name by a similar fraternal organization as here involved; and decided, that, regardless of whether the association was local or an organization of another State, the right to use the name is to be determined by priority of use, and that a name which has for a considerable time been used by such fraternal or beneficial organization can not by a mere incorporation be appropriated by a later association or corporation. Mr. Justice Hill, after stating this, said: "This case turns upon the question whether the plaintiffs, or either of them, have the right to the exclusive use of the distinctive name 'Good Samaritans' as a part of their chartered name." He then adverted to the point that in the case then under consideration "it appears that the only organizations entitled to the exclusive use of the name in question are those which have been 'incorporated.'" As in the present case it appears from the record that both the plaintiff and the organization under which the defendants claim to be acting are incorporated, we shall treat this case from the same viewpoint as it was considered in the *Mack* case; supra. Under a ruling in that case the burden is placed upon the organization seeking the injunction (the plaintiff in this case) "to show that it has the right to the exclusive use of the name over all other incorporated organizations or persons." Certainly, then, in the present case the burden rested upon the plaintiff, before it was entitled to the writ of injunction, to show that it has the right to the exclusive use of the name over the defendants, who alleged and proved that they were mere agents of another incorporated organization. As said by Judge Hill, speaking for the court in the *Mack* case, "To show that they have obtained a charter, or have organized and are using that name, is not sufficient. They must show not only that they have the right to use the name in question, but that they have the exclusive right to use it."

In the present case the plaintiff claims the exclusive right to the use of the name District Grand Lodge No. 18, Grand United Order of Odd Fellows of America, Jurisdiction of Georgia. The

defendants, plaintiffs in error here, only ask for a joint use of the name, stating that they have no objection to the plaintiff also using the name, provided they are not themselves deprived of a use which they enjoyed even before the organization of the plaintiff corporation; and it is not necessary to decide in the present case that these defendants are entitled to more than they ask. The question here becomes one, therefore, as to whether the organization represented by the defendants could have been properly enjoined, as they were, from using the name in question, or from holding meetings, etc., as prayed for by the plaintiff. Therefore, did the plaintiff have the exclusive right to use the name in question, so as to prevent the use of the same name on the part of the defendants? In the *Mack* case, supra, it was held that "it is not necessary that the organization actually entitled to the exclusive use of the name in question shall be a party litigant." And in that case it was held that the plaintiffs were not entitled to the exclusive use of the name which the defendants were seeking to use, because the name had already been previously adopted and used by another association which was not a party to the case which was before the court. In the case at bar the defendants relied upon proof that they were officers of an association which itself had long used the name which the plaintiffs have since attempted to appropriate.

It appears without contradiction from the record in this case that in 1843 the parent Grand Lodge in England granted a dispensation to certain persons in New York to establish a lodge or lodges in America; and this association adopted the name Grand United Order of Odd Fellows in America, which later extended the scope of its operations in various States of the Union, and into Georgia. This association, which we shall hereafter refer to as the National Order of Colored Odd Fellows, established itself in Georgia as far back as 1870, and what is now known as District Lodge No. 18, Grand United Order of United Odd Fellows, Jurisdiction of Georgia, for many years operated through local lodges which were subject to the National Order, and were finally merged into a District Grand Lodge of the National Order. Later, in 1902, with the consent of the National Organization, the Order in Georgia, which was then subject to the National Organization, was incorporated, with the permission of

the latter, as District Grand Lodge No. 18 of the Grand United Order of Odd Fellows, as District Grand Lodge No. 18, Grand United Order of Odd Fellows, Jurisdiction of Georgia. One of the provisions of the charter of District Grand Lodge No. 18 was that it was to promote the objects of the National Order and operate under its rules; and this is expressly stated. In the course of time it appears that dissensions arose in the order, which have several times been adjudicated by this court; and finally by a decree of the superior court of Fulton County, which was affirmed by this court, all of the assets, amounting to about $500,000, were turned over to the District Grand Lodge known as District Grand Lodge No. 18, G. O. U. O., Jurisdiction of Georgia, which thereupon proceeded to have its charter so amended as to disassociate itself entirely from the National Order. However, several of the lodges of the Order then seceded from District Grand Lodge No. 18, and continued their relations with the National Organization. And the board of committee management or governing body of the National Order directed these lodges to assemble at Savannah on December 17th, 1917, and to organize, as is their custom in every State, a District Grand Lodge of the members of those lodges "who wished to be loyal" to the parent organization. This was done, and a notice of the meeting was sent out prior to the convention, and Graves and others thereafter advertised that the meeting would be held; and this was the cause of the injunction prayed for.

*Judgment reversed. All the Justices concur, except Atkinson and Gilbert, JJ., dissenting.*