MOST WORSHIPFUL PRINCE HALL GRAND LODGE, FREE & ACCEPTED MASONS, OF GEORGIA v. SUPREME GRAND LODGE, MODERN FREE & ACCEPTED COLORED MASONS OF THE WORLD.

Civ. A. 362.

United States District Court
M. D. Georgia. Columbus Division.

Dec. 28, 1951.

Foley, Chappell, Kelly & Champion, of Columbus, Ga., for plaintiff.

George B. Culpepper, Jr., of Fort Valley, Ga., and Swinson, Elliott & Schloth, of Columbus, Ga., for defendant.

CONGER, District Judge.

In the original petition, The International Free and Accepted Masons, Inc., was made a party defendant. On written motion of the plaintiff, that defendant was stricken, and the suit tried was that of "Most Worshipful Prince Hall, Free and Accepted Masons, Jurisdiction of Georgia, Plaintiff, v. Supreme Grand Lodge, Modern Free and Accepted Colored Masons of the World, Defendant."

While there were only two parties to this case, a great deal of testimony, historical data and background were introduced by both the plaintiff and the defendant, with regard to York Free and Accepted Masons, Colored; the plaintiff offering the evidence in an effort to show that not only the defendant is spurious and existing illegally, but that the York Masons were in the same category, asserting as one of its contentions that it had the exclusive right to the use of the name "Free and Accepted Masons." The defendant introduced much evidence with respect to the York Masons in an effort to establish that that organization had used the words

"Free and Accepted Masons" over a very long period of time, and equally as long if not longer than the plaintiff, and that, therefore, the plaintiff was not entitled to the exclusive right to the use of that name. Because of the abundance of the evidence introduced with reference to the York Masons, that body will hereinafter be referred to.

For convenience and brevity, the plaintiff will hereinafter be referred to as the "Prince Hall" Masons, the defendant as the "Modern" Masons, and the York Free and Accepted Masons as "York" Masons.

The plaintiff contended that it has had a very long, honorable, worthy history, dating back to the early days of this country, and springing from the Grand Lodge of England, and that its existence throughout the country has been continuous. It further contended that it has operated in Georgia since immediately following the War between the States, and that its operations and existence have been continuous in Georgia since that date, and that because of its fraternal and charitable activities it has built up a large membership throughout Georgia and most of the United States, and that it is entitled to enjoy the fruits of the organization which it has built up unhampered by the defendant, which, it contends, is seeking to appropriate to itself the name of the plaintiff and receive the advantages appertaining thereto.

The plaintiff further contends that the defendant is an illegal body, is illegally constituted, and that it is wholly devoid and without authority to carry on or conduct the business of a Masonic organization, and that in so doing it is injuring and damaging the plaintiff and handicapping its services, disrupting its operations, leading to confusion and misunderstanding in the public mind and to those who are interested in Negro masonry. The plaintiff further contends that the defendant is using the signs, symbols and regalia used by the plaintiff, and which by its long use has the right of continued use, undisturbed by the defendant.

The plaintiff further contends that it has the right to maintain this action under the provisions of the Act of the General Assembly of 1909, embodied in Code Section 106–201, on the theory that it has the exclusive right to the use of the words "Free and Accepted" Masons, and the further right to bring and maintain this action under its common law remedy of protecting trade names. The plaintiff further contends that the defendant, being unauthentic and illegitimate, has no right of existence, and that holding itself out to its members and to the public that it is a lawfully constituted masonic body is a fraud upon the public and the plaintiff, and that as a matter of fact, defendant is largely a one man operation, primarily interested in insurance rather than in the fraternal and charitable aspect of its organization, and that its alleged unauthorized and illegal activities inure to the detriment of the plaintiff.

The defendant contends that it has an honorable existence, commencing back in 1917 at Opelika, in the State of Alabama, and that it has had a continuous honorable existence since that date to the present time. That it is engaged in fraternal and charitable activities, and while ninety-eight per cent of its members are enlisted in the insurance and burial features, it is not primarily a fraternal or burial organization.

The defendant further contends that it was given a charter by a court of competent jurisdiction in 1921, and that it came into Georgia and commenced to do business about the year 1924, has a large following in Georgia, valuable assets and good will, as well as tangible assets for the conduct of its business, and that its organization was entirely legitimate; that its conduct has been proper, and that it has as much right to exist and do business as a fraternal organization as the plaintiff or any other such organization.

The defendant further contends that the Act of 1909, supra, is the exclusive remedy for the plaintiff, and that the Supreme Court's construction of that Act is to the effect that before the party can take advantage of "abative" privileges therein, it is required to show it has the "exclusive" right to the use of the name which it seeks to enjoin others from using. It further contends that the evidence is sufficiently

clear and ample that the plaintiff did not have the exclusive. right to the use of the name, and that it has never had such right. It contends that the York Masons are as ancient as the Prince Hall, and that York Masons have at all times and for hundreds of years used the name "Free and Accepted" as a part of their masonic name, and that in addition to its long and honorable history, it has a very large following, not only in Georgia, but throughout the "States of the Union."

The defendant further contended that the plaintiff was barred by laches.

The defendant further contended that the plaintiff did not come into court with clean hands.

The consideration of this case consumed the major part of seven days. There were many well versed, highly educated, recognized Negro historians used as witnesses on both sides. A few of the major ones consisted of Davis, Johnson, Dobbs, Turner and Baldwin. In addition to these historians, there were many histories on Masonry and Negro Masonry quoted and read from and considered, the principal ones being Johnson, Davis, Grimshaw, Upton, Voorhis and Mitchell. In addition to these historical volumes, there were innumerable pamphlets, theses and articles read, quoted from and considered. Having waded through all the mass of evidence and listened to the argument, I have arrived at a clear conclusion, sufficient and satisfactory to my mind. I do not deem it necessary, nor do I believe it would serve any good purpose, to enter into a lengthy dissertation of the innumerable by-problems and questions raised and considered, or. the historical facts of the case as between the plaintiff and the defendant. If this case were between the Prince Hall Masons and the York Masons, I believe a careful and analytical survey and study would prove helpful and of much assistance.

Notwithstanding the evident tremendous amount of labor and study put forth in the preparation of this case for trial, the very broad field covered in the trial, both directly and by implication, the energy, thoroughness and persistence in the conduct of the trial, I shall do no more than simply set out, briefly, but I hope sufficiently to cover the main points, the findings of fact and conclusions of law arrived at.

### Findings of Fact.

1. I find that the plaintiff and its claimed legitimate predecessors, although often not using the exact name presently used, has had a favorable and continuous existence in America since about the year 1776.

2. I find that the plaintiff, or its legitimate predecessors, came into Georgia immediately following the War between the States, and that it has had continuous existence since that date.

3. I find that the plaintiff was granted a charter in Georgia by the Superior. Court of Chatham County on July 11, 1890, as "Most Worshipful Union Grand Lodge of the Most Ancient and Honorable Fraternity of Ancient Free and Accepted Masons of the State of Georgia;" that this charter was renewed and amended in 1936, by proper order of the court, and that the name was changed to "Most Worshipful Prince Hall Grand Lodge, A. F. and A. M. of Georgia," and that the charter was again amended in 1950, by proper court order, eliminating from the name of the plaintiff the word "Ancient."

4. I find that the plaintiff carries on and conducts fraternal and charitable affairs, that it now has in Georgia approximately 15,000 male members, approximately 5,000 female, auxiliary or Eastern Star members, 190 lodges for men, and 150 for women.

5. I find that the plaintiff has at all times conducted itself and its affairs in a high, honorable, legal manner, and that it has used the words "Free and Accepted" as a descriptive part of its name at all times during its existence in this country and in this State.

6. I find that in addition to the large membership which the plaintiff has, it has now accumulated and possesses in Georgia properties and monies of large worth and value.

7. I find as a matter of fact that the plaintiff does not have the "exclusive" right to the words "Free and Accepted" as a part of its Masonic name.

8. I find that the words "Prince Hall" as used by the plaintiff in its name have not been so used for any considerable length of time and have no particular significance because of use, but do have great and fundamental significance because of origin and historical interest.

9. I find, according to Masonic history and jurisprudence, that subordinate lodges can only come into existence, and cannot legally continue to exist except, by warrant or charter from a Grand Lodge.

10. I find that the plaintiff, or the Prince Hall Masons, has two organizations, to-wit, a Grand Lodge, which is generally co-extensive with the States, each of which is co-equal and supreme within its own jurisdiction, and subordinate lodges.

11. I find that as a matter of practice the plaintiff and its members do not recognize the defendant as being legally organized, legally existing, or its individual members as being masons, except and unless and until a member of the defendant seeking to affiliate with the plaintiff is "healed."

12. I find that the defendant was organized or came into existence about the year 1917, at or near Opelika, Alabama, when a group of from six to eight persons, said to be Master Masons, met and organized.

13. I find that the defendant, or its legal predecessor, was granted a charter by a court of competent jurisdiction for the County of Jefferson and State of Alabama on November 17, 1921, and it was named in the application for and the order granting the order "Free and Accepted Colored Masons of America."

14. I find that by an amendment to the charter of the defendant on February 27, 1945, the name of the defendant was changed to "Supreme Grand Lodge, Modern Free and Accepted Colored Masons of the World."

15. I find as a matter of fact, and it was introduced in evidence, an insurance certificate showing that the defendant had been doing business in the State of Georgia since 1924; that they were authorized officially to do business in the State of Georgia by the Secretary of State on October 18, 1950.

16. I find that in 1924 delegates from a few subordinate lodges in two States (Alabama and Georgia) formed a Supreme Grand Lodge, and that J. B. Baldwin was elected the Supreme Grand Master of the Supreme Grand Lodge, which office he has held continuously and at all times since.

17. I find that the defendant uses the same ceremonies, rituals, insignia, symbols, emblems, signs and paraphernalia as used by the plaintiff and the York Masons.

18. I find that as a matter of practice the defendant recognized the plaintiff as being legally constituted and lawfully existing, and its individual members as being legitimate Masons. It also recognizes the legality of the organization and the existence of the York Masons, and recognizes its members as being legal Masons.

19. I find that neither the plaintiff nor the York Masons recognized the defendant as being legally organized and constituted, because it has no writ, warrant or charter from a superior legally existing body.

20. I find that the plaintiff is very antagonistic towards the defendant and evidences an uncompromising attitude, but, on the other hand, I find that the York Masons are friendly towards the defendant, and that conferences between the high officials have been had and negotiations commenced looking towards the consolidation of the two or the taking over of the defendant by the "York" Masonic group.

21. I find that the defendant has since about the year 1918 been almost if not completely dominated and controlled by J. B. Baldwin, its Supreme Grand Master of its Supreme Grand Lodge.

22. I find that the Supreme Grand Master appoints the Deputy Supreme Grand Masters, and that they are under his direct control and supervision.

23. I find that the interest of the defendant is pretty largely that of insurance or burial aid; that ninety-eight per cent of its members carry one or the other; that the Supreme Grand Officials receive their compensation, which is quite remuner-

ative, from that feature of the organization, and that they have recently increased the amount of insurance permissible up to $500, effective September 1, 1951.

24. I find that during the regime of J. B. Baldwin as Supreme Grand Master of the Supreme Grand Lodge he has dealt in the undertaking business, the casket business, and other side enterprises in aid of the burial and insurance features of the defendant, which inured to the enjoyment and enrichment of the Supreme Grand Master.

25. I find that according to the evidence of the defendant it has approximately 2200 members in Georgia and approximately 10,000 in other States, and that ninety-eight per cent of the members carry either burial benefits up to $100 or endowment benefits up to $300. They only have on hand the sum of approximately $7,000 in cash, an equity in buildings worth $6,000 or $7,000, and mortgages and security deeds of approximately $8,000, some not signed, others improperly executed, and in all of which J. B. Baldwin is the grantee.

26. I find that the defendant does not have or carry any bank account or any bank deposit, but that the treasurer handles the funds in cash and keeps them in currency in a box about the house, or elsewhere.

27. I find that the treasurer and all the officers handling money, except the Supreme Grand Master, are under bond with the Maryland Casualty Company, but the funds of the defendant have been lost on two or three occasions, and some of its records have likewise been lost or misplaced.

28. I find that when a member of the defendant dies, entitled either to endowment insurance or burial benefits, the beneficiary or party entitled thereto is immediately paid by check drawn on the personal account of J. B. Baldwin, and he is subsequently reimbursed in cash by the Supreme Grand Treasurer.

29. I find that the defendant's use of the words "Free and Accepted" is an infringement on the real name or trade name of the plaintiff and is such a colorable imitation thereof that the general public, in

the exercise of ordinary care, might think or be led to believe that it is the name of the plaintiff, who had the first and prior right to the use of the name.

30. I find as a matter of fact that the use of the words "Free and Accepted" by the defendant is a fraud against the plaintiff, who is entitled to the use of those words, and that the dominant, controlling master mind of the defendant, J. B. Baldwin, intended to create the impression in the minds of the public that he and his group were the ancient and original "Free and Accepted" Masons, which they are not.

31. I find that the adoption by the defendant of the words "Free and Accepted", which are the distinctive features of the plaintiff, was done by the defendant with the intent to deceive and defraud the public and reap the benefits of plaintiff's good will, to the injury and damage of the plaintiff, and to the confusion of the public.

32. I find, according to masonic jurisprudence, that the defendant was not regularly and lawfully organized, since it never had any charter, writ, or warrant of authority from any superior body.

33. I find that because of the manner of its organization, the manner of its existence, the fact that it is largely a one-man institution, the fact that it is apparently more interested in the insurance feature than in the fraternal and benevolent features, because they were to give a candidate three degrees in one night, that the defendant is not authentic, that it is from a purely masonic point of view spurious and illegitimate, and that it has no right to use the words "Free and Accepted" in its masonic name.

### Conclusions of Law.

1. I conclude, if the plaintiff had relied solely on the provisions of the Act of 1909, Code Section 106–201, it would have assumed the burden of establishing that it had the exclusive right to the use of the words "Free and Accepted." Independent Order of Good Samaritans and Daughters of Samaria, v. Mack, 139 Ga. 835, 78 S.E. 336; Graves v. District Grand

Lodge No. 18, Etc., 155 Ga. 147, 116 S.E. 613.

2. I conclude that the plaintiff relied upon its common law rights to protect its name as against the defendent, although it may not have the exclusive right to its use.

3. I conclude that the fraternal and charitable deeds of the plaintiff over such a long period gave it an interest in and the right to use the words "Free and Accepted," and that it had a value therein to itself and to the members it recruited and was entitled to enjoy it.

4. I conclude that under the evidence in this case the plaintiff is not barred by laches.

5. I further conclude that when a statute such as the Act of 1909, supra, is enacted which gives a new remedy for an existing right, that such statute does not take away the pre-existing remedy, unless and without express words, or necessary implication to that effect, and that ordinarily the new remedy is simply accumulation, and that a person entitled may pursue either.

6. I conclude from what is said above that the plaintiff is entitled to the injunction sought, and it will be so ordered in appropriate judgment hereto affixed.

7. I conclude that the defendant should not immediately be required to discontinue its operations because of the inevitable loss that would inure to it and its members under such proceeding.

8. I conclude that the defendant should have a reasonable time within which to wind up its affairs in Georgia, or either merge with the York Masons, which appears to be a duly qualified and existing masonic body in Georgia and regularly and legally operated.

9. I can neither find as a matter of fact nor conclude as a matter of law, but I urgently recommend that the defendant begin further additional conferences, and that negotiations be renewed and continued with the York Masons, looking towards the fusion of the two, or the taking over of the defendant by the York Masons, or working out some satisfactory agreement, so that the defendant and the members thereof residing in Georgia will not materially suffer or sustain loss.

### Judgment.

Whereupon, it is considered, ordered and adjudged, That the defendant, Supreme Grand Lodge, Modern Free and Accepted Colored Masons of the World, be, and it is hereby, enjoined, collectively and individually, including the agents, officers, associates and representatives,

(a) From appropriating and employing the ritual ceremonies of the plaintiff and using any insignia, name, emblem, badge, symbol or paraphernalia of the plaintiff;

(b) From using the words "Free and Accepted" in its orders, by-laws, initiations, publications, letterheads, or otherwise.

It is further ordered that this decree and judgment shall not take effect instanter, but that the same shall remain and be in abeyance for a period of one year from this date, so that the defendant may either orderly dissolve and discontinue its business as now carried on or merge with the York Masons or some other legally constituted and legally existing Masonic body.

If during the twelve months period above provided there should be a merger or consolidation of the defendant with some other legally constituted Masonic body, that fact shall be made known to the Court in a competent and evidential manner; but if no such merger takes place within the twelve months period, the full force and effect of this decree shall become binding and effective twelve months from this date.

Because of the heavy court costs and the unequal ability of the parties to pay, I am not assessing the whole cost against the defendant, which would ordinarily be done, but I am assessing the cost two-thirds or 66⅔ per cent against the plaintiff, and one-third or 33⅓ per cent against the defendant.